EDWARD M. SARGENT vs. BOSTON AND LOWELL RAILROAD CORPORATION & another.

Suffolk. March 10. — September 4, 1874. COLT & ENDICOTT, JJ., absent.

A railroad corporation is not bound to furnish an expressman, who seeks to carry on his business over its road, with facilities and accommodations different in kind from those furnished to the general public; and the fact that it has furnished him with such facilities for many years, and that he has thereby acquired a valuable business, is immaterial.

The St. of 1867, c. 339, obliging each railroad within the Commonwealth to give to all persons or companies reasonable and equal terms, facilities and accommodations for the transportation of merchandise, does not render it unlawful for such a railroad to carry on the express business itself and to refuse to allow similar privileges to another person.

When a railroad corporation may lawfully refuse to furnish a person desiring to carry on an express business over its road with greater facilities than are furnished to the public generally, the fact that the corporation carries on such business itself, and that this is *ultra vires*, is immaterial.

TORT against the Boston & Lowell Railroad Corporation, and the Nashua & Lowell Railroad Corporation. Writ dated November 15, 1871. The first count of the plaintiff's declaration alleged that the defendants before and at the times hereinafter mentioned were common carriers of goods and chattels for hire from Boston to Lowell, from Boston to Nashua, New Hampshire, from Boston to East Wilton, New Hampshire, from Lowell to Lawrence, and from Lowell to Salem; that said corporations owned, controlled, managed or operated all of said routes for the transportation of passengers, express matter and freight; that by the charters of said corporations, and the laws of the Commonwealth, the defendants were bound to give all persons reasonable and equal terms, facilities and accommodations for the transportation of themselves, their agents and servants, and of their merchandise and other property upon and over the railroads owned and operated by said corporations, and for the use of their depots and other buildings and grounds; that on November 17, 1865, and for a long time previous, the plaintiff was engaged in business as an expressman or common carrier for hire, by passenger trains, of merchandise and other property, over all of said routes and that by his skill, energy and courtesy he had built up a

very large and profitable business upon said routes ; that on said day, the defendant corporations, conspiring and illegally contriving how they might deprive the plaintiff of the gains and profits of his said business, and appropriate the same unto themselves, notified the plaintiff that proposals would be received for the rent of the express privileges over said routes during the year 1866; that said defendant corporations, in violation of their charters and the laws of said Commonwealth, pretended to receive bids for said express routes and privileges, and in return therefor to grant the exclusive right to said express routes and privileges to the highest bidder therefor; that on December 19, 1865, the said defendant corporations pretended to have rented or let exclusively said routes and privileges to George F. Penniman, Frederick Lovejoy and P. W. Jones ; and on said day last mentioned, notified the plaintiff, that they had leased the said express privileges to said Penniman, Jones and Lovejoy for the term of one year from and after the last day of December then instant, and that they required the plaintiff to vacate seasonably, for the use of said Penniman, Lovejoy and Jones, the depot, offices and other premises of said defendant corporations then occupied by the plaintiff in his business over said routes ; that by and in pursuance of said notification, the said defendant corporations took away from the plaintiff the said rights and privileges over said express routes, and the valuable good will and trade which the plaintiff had secured in his said business, although the plaintiff had offered to pay the said defendant corporations a just and reasonable sum of money to be allowed to continue in his said business over the said routes as formerly, and transferred the same to the said Penniman, Jones and Lovejoy, to the exclusion of the plaintiff.

The declaration further alleged that the plaintiff was credibly informed and had reason to believe that said Penniman, Jones and Lovejoy were and are only the paid agents of said defendant corporations, and not the proprietors of said express privileges, and that they have continued as such, and such only, to the date of this writ, and that the profits accruing from said fraudulent arrangement are the property of the said defendant corporations ; that from January 1, 1866, up to the date of the writ, the said defendant corporations had and have had ample convenience and accommodation for the carriage and conveyance, not only of all

freight and express parcels of the said Penniman, Jones and Lovejoy, but also for the carriage and conveyance of the freight and express parcels of the plaintiff; and that the defendant corporations, contriving unjustly and unlawfully to deprive the plaintiff of the profits and gains of his business as express carrier so built up as aforesaid, had excluded the plaintiff from receiving and transporting upon and over the routes owned and operated by said defendant corporations any express matter, and also had excluded as aforesaid the parties having charge of the same in the employment of the plaintiff from receiving and transporting upon and over said routes any express matter upon any terms which were reasonable and just, unless such express matter was intrusted to said defendant corporations, or to persons designated by them to act as express carriers of the same ; that by said illegal acts of the said defendant corporations, the plaintiff had lost all the profits and gains accruing from his said business over the said routes of the defendant corporations, from the date of said exclusion to the date of the writ; and that his said business as express carrier had thereby been entirely taken away and lost unto him.

There was a second count, the nature of which is stated in the opinion. Trial before *Colt*, J., who reported the case to the full court in substance as follows:

The plaintiff seeks to recover damages of the defendants for breaking up his business as an expressman over the railroads of the defendants, who were jointly liable, if liable at all. The plaintiff in his opening offered to prove that for a long time prior to November 17, 1865, the defendants had been common carriers of persons and merchandise over the railroads operated by them and mentioned in the first count ; and that from the year 1842 to January 1, 1866, there were often, and for long periods, opposition expresses running over each of said railroads, in the same baggage car and at the same time, during all which period the plaintiff had run an express ; that contracts were entered into by the defendants and these expresses upon said roads, for the conveyance of express matter over said roads, designating the space in the cars of the passenger trains to be occupied by such express matter ; that this express matter during its transit was in the actual custody of the expressman with whom such contract was made, or his agent

that at the time of the alleged tort the good will of the plaintiff's business was valuable, and that he was more or less damaged in his business and property by the alleged tort; that September 1, 1857, the plaintiff and E. S. Rand, under the style of Sargent & Co., and H. T. Morrill and Robert Howison, under the style of Morrill & Co., made a contract with the defendants for doing express business over the routes of the defendants, which was to continue till April 1, 1860, unless previously terminated by mutual consent; that under this contract said firms carried on the express business over the roads of the defendants until April 1, 1860, and, by oral extension of said written contract, continued said business till December 19, 1865, when the defendants notified them that the express route on which they had been accustomed to run had been let to other parties, and that thereafter they would not be afforded the facilities before enjoyed by them; that on November 17, 1865, a printed notice of the defendants was delivered to the plaintiff, as stated in the declaration, and a like notice was delivered to each of the copartners and others, to the effect that proposals would be received by the defendants for the renting of the express privileges, but that there was no public notification by advertisement or otherwise; that on December 19, 1865, the defendants decided to let the express routes under said proposals to Penniman, Lovejoy & Jones, respectively, and on the same day delivered to Morrill, Howison, Sargent and Rand, respectively, the first mentioned notices; and that on December 20, 1865, the defendants made contracts with Messrs. Jones, Lovejoy and Penniman, respectively, for doing said express business; that upon the expiration of these contracts they were renewed for a year; that at the same time with the making of these last-named contracts, an order was promulgated by the defendants that the plaintiff and his messengers and agents were to be excluded from carrying on an express business over said roads, which order was enforced from January 1, 1866, to the date of the writ; that during that time the plaintiff had repeatedly demanded to be allowed to carry on his express business over said roads as formerly; that the plaintiff was able and offered to pay the defendants a reasonable compensation therefor; and that at the times of said demands there was sufficient accommodation in the defendants' baggage cars for the plaintiff as well as the other

occupants of said cars; that at the expiration of the year 1867 the defendants took upon themselves the exclusive management of all the express business upon their roads, collecting, transporting and delivering express parcels under the name of the Boston & Lowell and Nashua Railroads Parcel Department; and were so transacting the business at the date of the writ. That Edward Tuck was allowed, prior to 1865, and continuously since, to the date of the writ, to pass over the road between Lowell and Boston, on an ordinary passenger season ticket, for which he paid the usual price, doing a general collection business in Boston for banks, insurance companies and others in Lowell desiring his services.

If upon the foregoing facts the plaintiff would be entitled to recover, the case is to stand for trial; otherwise, judgment is to be rendered for the defendants.

*S. C. Darling*, for the plaintiff, cited *New England Express Co.* v. *Maine Central Railroad*, 57 Me. 188; *Sandford* v. *Railroad Co.* 24 Penn. St. 378; St. 1867, c. 339.

*D. S. Richardson & G. F. Richardson*, (*J. H. George*, of New Hampshire, with them,) for the defendants.

WELLS, J. This action is founded upon the supposed obligation of the defendants, as common carriers, to provide facilities and accommodations to enable the plaintiff to transact his business as expressman over and upon the railroads of the defendants. For this purpose he requires that his merchandise and parcels shall be transported, not as freight under the general charge and control of the managers and servants of the railroads, but in their passenger trains and under the exclusive control and supervision of the plaintiff and his agents: who also require special accommodations and facilities in the cars and stations of the defendants, for the receipt and distribution of their packages. It is not alleged that there is any contract for such service. The contract which once existed, and the course of business in previous years, are recited for the purpose of showing the manner in which the business of the plaintiff had grown up and the good will connected therewith had been gained, as bearing upon the damages caused by withdrawing from him the means for its further prosecution. The complaint is, that under the guise of a proposal to sell or let the privilege which the plaintiff and his associates had before

enjoyed, to be used exclusively by the one party who would pay most for it, the defendants had in fact denied it to all, and assumed the conduct of the business of express carriage and parcel delivery by its own agents and servants.

The allegation of the second count, that the defendants had refused to receive and transport articles of freight for the plaintiff in the usual modes of transportation of freight, is abandoned.

We know of no principle or rule of law which imposes upon a railroad corporation the obligation to perform service in the transportation of freight, otherwise than as a carrier of goods for the owner in accordance with their consignment; or which forbids it from establishing uniform regulations applicable alike to all persons composing the public to whom the service is due. We are pointed to no provision in the charters of these defendants, or in the general laws relating to railroads, which subjects the use of their roads to the convenience or requirements of other carriers than the corporations authorized to construct and operate them, and such other railroads as may have been authorized to enter upon or unite with and use them. Gen. Sts. *c.* 63, § 117.

All the provisions of law for the regulation of railroads contemplate the unlimited exercise by the corporation of the rights and duties of general carriers of goods and passengers; and this involves the right to adopt any and all reasonable rules and regulations to direct the mode in which their business shall be transacted. They cannot be required to convert their passenger trains to the purposes of freight at the discretion of parties not responsible for the management of the trains; nor can they be compelled to admit others than their own agents and servants upon their trains or to their stations for the custody, care, receipt and delivery of freight or parcels.

Whether the defendants, in establishing and conducting the business of their own "parcel department" undertake to collect and distribute goods and parcels in a manner which involves acts *ultra vires*, does not affect the question; nor, if they do so, does it afford the plaintiff any ground of action. His claim is for their refusal to furnish to him certain claimed facilities upon the roads. That refusal does not involve any acts or exercise of powers *ultra vires.*

Nor does the fact that for many years the defendants did afford certain facilities to separate and independent carriers, as express companies, confer any right upon them or impose any obligation, either of contract or duty, upon the defendants to continue the same unchanged.

Whatever may have been contemplated, when the charters for these roads were granted, as to the parties by whom and the mode in which the tracks would be used for the running of trains or carriages upon them, and the manner in which tolls would be received, it cannot be doubted that since the St. of 1845, c. 191, the direction of the use of the roads, and the control of all carriages upon them, are exclusively in the directors of the corporations owning them. It is a franchise of a public nature, it is true ; and the directors are bound to conduct its exercise with a view to public convenience. But they, and not the individual members of the public, are intrusted with the discretion, authority and duty, in the first instance, to determine what the public convenience requires. They are subject, in this respect, to the oversight and regulation of the legislature. It is only when they disregard such regulations as are provided by law, or required by a reasonable consideration of the public convenience and the purposes of their charter, that individuals are entitled to complain.

The plaintiff's counsel argues that it is unreasonable, and a violation of the legal obligations of the defendants, to make any discrimination between individuals ; or to refuse to the plaintiff privileges which they grant to any other party ; and therefore that the arrangement of the defendants with another express company, by which the plaintiff was excluded from similar facilities, was a violation of his legal rights. Such does not appear to be the rule of the common law as held in Massachusetts. *Fitchburg Railroad* v. *Gage,* 12 Gray, 393. If such a rule has been established by the St. of 1867, c. 339, the plaintiff's case is not maintained upon that ground : 1st, because the contracts with other parties complained of were made before the statute, to wit, in December, 1865, for one year from January 1, 1866, and renewed only for one year from January 1, 1867, — and although the report finds that during the time from January 1, 1866, to the date of the writ, November 15, 1871, the plaintiff " has repeatedly demanded to be allowed to carry on his express

business over said roads as formerly," it does not appear that any such demand was made after that statute took effect and before the arrangement with those other parties expired. 2d, because the declaration does not charge any such wrong. The allegation is that the parties with whom the supposed contracts were made " were and are only the paid agents of said defendant corporations, and not the proprietors of said express privileges, and that they have continued as such, and such only, to the date of this writ; and that the profits accruing from said fraudulent arrangement are the property of the said defendant corporations." The whole scope and drift of the declaration is to charge the defendants with " conspiring and illegally contriving," by means of pretended contracts with other parties, to deprive the plaintiff of the profits of his express business in order to appropriate the same to their own use. The gravamen of his complaint then is not that the defendants have refused to give him " equal terms, facilities and accommodations " with other persons and companies, but simply that they have refused to give him such facilities as he requires, for his special business as carrier, over their roads. His claim must stand upon the right to demand such facilities independently of any enjoyment of like facilities by others. As an absolute right this cannot be maintained.

The plaintiff contends that the " parcel department " which the defendants have established, to the exclusion of the plaintiff and others desiring to make like arrangements, is in contravention of the equality required by the statute, as much as if it were conducted in the interest of a third party. But we think the statute was intended to apply to the dealings of the railroad corporation with the public, and not to the mode in which it should arrange and conduct the different branches of its business as carrier. All that the plaintiff can demand is that, in each of those branches, he shall have equal terms with other persons and companies.

The report finds that when the plaintiff demanded to be allowed to carry on his express business over said roads as formerly, " there was sufficient accommodation in the defendants' baggage cars for the plaintiff as well as the other occupants of said cars." But there was no refusal to carry the plaintiff and his freight upon the same terms and in the same manner as the defendants per-

formed like service for other persons and companies. It was a refusal only to permit the plaintiff to occupy a portion of the space in the cars and stations in the same manner and for the same purposes as the defendants themselves used and occupied them, paying therefor, and for the required transportation, some special rate which could not well be adjusted otherwise than by special agreement.

The plaintiff fails to make out a legal cause of action, and the

*Judgment must be for the defendants.*