## H. & T. C. RY. v. RUST & DINKINS.

### SUPREME COURT, GALVESTON TERM, 1883.

*Railroads—Freight Discrimination— Common Law Inhibition.—* Leading decisions have been uniform in maintaining on principles of the common law, irrespective of Statutes, that the duty of railroads toward the public lies in the strictest impartiality in the conduct of their business, and in withholding all privileges or preferences from one customer which are not extended to all; but the rule is not to be inexorably applied, where the rate is reasonable for all, to exclude contracts for transportation at a less rate in special cases, where the discrimination appears reasonable.

*Same.—*It is not *mere* discrimination that is rendered obnoxious and unlawful, but it is *unjust* discrimination. As to what shall constitute improper discrimination is a question of law and fact in the given case, to be ascertained by applying to the facts of the case the principles of the common law to the general policy of our statutory law.

*Same—Test of Liability.—*It ought to have been submitted to the jury to determine whether, under all the facts of the case, the defendant charged the plaintiffs a rate beyond what was reasonable, and beyond the price which was exacted of the public, generally, at the times when the plaintiffs shipped their cotton on defendants' railroad. And if, although the plaintiffs were not required to pay a higher rate than were the public generally, yet if the defendant had allowed to certain particular persons, or merchants in a certain particular locality, more advantageous terms than had been given to the public, generally, or to the plaintiffs, it ought to have been submitted as an issue of fact for the jury to determine, whether, under appropriate instructions applicable to the subject, under all the evidence applicable to the question, such preference so given was a fair and legitimate one, one justified by the common law rule forbidding the carrier to give to one special privileges which it denies to another, but which, at that same time, does not exclude, as forbidden, contracts for transportation at a less rate, in special cases, where, under the circumstances, the discrimination appears reasonable.

Appeal from Travis county.    Opinion by Walker, J.

The charge of the court asserts the proposition that it is unlawful for a railroad company to discriminate in the rates charged as freight between shippers over its road where the transportation involves the like service to the one as to the other, and where the said shippers are sending their freights over the roads during the same period of time. It likewise propounded the list whereby to ascertain and determine in what consisted the "*discrimination*" which was defined, in effect, to consist of the single fact, without other qualification or exception, of charging a greater rate to the one person than to the other, or others. Equality and sameness of charge for transportation to all alike is held in the charge to be a legal obligation on the part of the railroad company, and deviation from that list to be a violation of it, and further, that the difference between the amounts so charged to the parties respectively, furnishes the measure of damages to the party who has paid the higher price.

At the date of the transaction which originated this suit, no legislation had been had, which affected or modified the common law rules applicable to the rights of a common carrier in respect to making contracts establishing rates of freight with its customers and patrons. The leading American decisions which have, in recent times passed, upon the obligations of railway companies towards the public in their relation of common carriers have been uniform, we think, in maintaining on principles of the common law, irrespective of statute, that their duty lies in the strictest impartiality in the conduct of their business, and in withholding all privileges or preferences from one customer, which are not extended to all. See Hutch. on Carriers, Secs. 297-301, inclusive, and cases there cited and discussed, and other authorities cited. Peirce in his treatise on the law of railroads p. 498, deduces from the cases decided the following propositions : "A railroad company, being under a public obligation as a common carrier, and being in a certain sense a public agent, in consequence of holding by delegation the power of eminent domain, is required to treat the public with equality and fairness. It cannot discriminate in the transportation of persons and merchandise by giving special privileges to one which it denies to another ; (citing Sanford v. Catawissa, W· & E. R. Co., 24 Pa. St., 378 ; Audenried v. Phil. & R.

R. R. Co., 68 Pa. St., 370 ; New England Express Co. v. Maine Cent. R. Co., 57 Maine, 188 ; McDuffie v. Portland, L. R. R Co., 52 N. H., 430 ; Chicago & N. W. R. Co., v. People, 56 Ill. 365,) or by charging for the same service higher rates to some than others, (citing Messenger v. Pa. R. Co., 7 Vroom, 407 ; Cumberland Valley R. Co.'s Appeal, 62 Pa. St , 218, 230 ; Camblas v. Phil. R. R .Co., 4 Brewster, 563, 622 ; Vincent & Chicago v. A. R. Co. 49 Ill, 33.) This rule is not inexorably applied, so as, provided the rate is reasonable for all, to exclude contracts for transportation at a less rate in special cases, where, under the circumstances, the discrimination appears reasonable." (Citing Fitchberg R. Co. v. Gage, 12 Gray, 392 ; Sargent v. Boston & L. R. Co., 115 Mass., 416, 422 ; McDuffie v. Portland & R. R. Co., 52 N. H., 450, 451, 452 ; Eclipse Tow Boat Co, v. Pontchartrain R. Co 24 La. An. 1.)

Hutchinson, in his work on carriers, section 320, in a note, shows that there is a difference of opinion upon the question whether by common law the common carrier was bound to charge the same rate for the same service to all parties, and he quotes from Byles, J., as follows : "I know of no common law reason why a carrier may not charge less than what is reasonable to one person, or even carrying for him free of charge." The question was considered in the Fitchburg Railroad Company v. Gage, 12 Gray, 394. The court said : "The principle derived from that service (the common law) is very plain and simple. It requires equal justice to all. But the equality which is to be observed in relation to the public, and to every individual, consists in the restricted right to charge, in each particular case of service, a reasonable compensation and no more. If the carrier confines himself to this, no wrong can be done and no cause afforded for complaint." The author in the discussion contained in the note, shows the construction which English courts have placed upon the English railway and canal traffic act of 1854, in regard to preferences in the rates charged for carrying. That act has been interpreted to apply to preferences of that character, and construed not to prohibit just and reasonable discriminations. In that respect certainly the rule of the common law is not more stringent against carriers than the act itself, which was passed in order to limit and restrict them in their dealings with the public. In

this connection we will quote some of the comments of the author made in the note: "Although the purpose of the act is to prevent, among other things, unreasonable discrimination in rates, to the prejudice or disadvantage of particular individuals, it was not, it has been said, to relieve every person from all possible prejudice or disadvantage from any arrangement, which might be made by the carrier, if the arrangement was for the benefit of the public at large, for the reasonable increase of the business and profits of the carrier, and was not entered into with a view to the advantage or preference of one party or disadvantage of the other. * * * So the courts will not interfere if the charge or arrangement will greatly promote the interest of the carrier without unreasonably prejudicing those who may desire to employ him, or will be beneficial to the community, though disadvantageous to particular individuals. * * But though the court, when such a question is brought before it under the statute, it is said, will feel great reluctance in interfering with the carrier in the management of his own business, and his interest must be taken into the account, yet if the discrimination made by him subjects others to unreasonable disadvantages, it will interfere and enjoin the carrier from making such preferences. And so it will, if the object of the carrier is, not solely his own advantage, but also to give a preference to one individual to the disadvantage of another or to one locality to the prejudice of another." The author appends to this note a reference to several English reported cases, which see.

The rule applicable to the subject of discrimination or preferences given by railroad companies, as to freight rates, as it is summarized by Mr. Pierce, quoted above, seems, on reason and authority, to be a just and correct statement of it, as it ought to be construed and held to apply under the principles of the common law. Our constitution adopted April 18, 1876, contains the following action under article 10: "Railroads heretofore constructed, or that may hereafter be constructed in this state, are hereby declared public highways, and railroad companies, common carriers. The legislature shall pass laws to correct abuses and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in the state, and shall from time to time pass laws establishing reasonable

maximum rates of charges for the transportation of passengers and freight on said railroads, and enforce such laws by adequate penalties.

The legislature, in 1879, passed a law on the subject contemplated by the foregoing provision of the constitution, but being enacted after the plaintiff's cause of complaint occurred, does not require from us any discussion concerning it.

The section of the act referred to, article 4257, Revised Statutes, provides, among other things, as follows: "And no unjust discrimination in the rates or charges for the transportation of any freight shall be made against any person or place on any railroad in this state; and it shall be *prima facie* evidence of an unjust discrimination for any railroad company to demand or receive from one person, firm or company, a greater compensation than from another for the transportation, in this state, of any freight of the same kind or class, in equal or greater quanties, for the same or a less distance, which *prima facie* evidence may be rebutted by competent testimony on the part of such company, showing that the discrimination, if any, was not an unjust one. And the question upon an issue as to whether any alleged discrimination is un ust or not, shall be a question of fact to be tried and determined as any other issue of fact in a case."

The organic law, together with the legislation had upon the subject, though not affecting the rights of the parties, by reason of their operation upon them, are here quoted and referred to, to show, in this connection, that the constitutional direction given to the law department of government, as well as the legislative mind, both coincide in defining the meaning of the term, "discrimination," and in the meaning contemplated in the prohibition against "discrimination," with the general qualifications on the subject which we have pointed out, as existing under decisions in America and in England. It is not "*mere*" discrimination that is rendered obnoxious and unlawful, but it is "*unjust*" discrimination. As to what shall constitute improper discrimination, is not defined, nor attempted to be defined; it is a question of law and fact in the given case, and whether the discrimination be or not unlawful, must be ascertained by applying to the facts of the case, the principles of the common law to the gen-

eral policy of our statutory law governing carriers and railroads.

The test of liability, submitted by the charge, was confined to the single question of irregularity in the rate of freight charged to the plaintiffs, as compared with the rate of freight charged to certain other specific persons, irrespective of any or all of the other facts of the case. In that the court erred. It ought to have been submitted to the jury to determine whether, under all the facts in the case, the defendant charged plaintiffs a rate beyond what was reasonable, and beyond the price which was exacted of the public generally, at the time when the plaintiffs shipped their cotton on defendant's railroad. And if, although the plaintiffs were not required to pay a higher rate than were the public generally, yet if the defendant had allowed to certain particular persons, or merchants in certain particular locality, more advantageous terms than had been given to the public generally, or to the plaintiffs, it ought to have been submitted as an issue of fact for the jury to determine whether, under appropriate instructions applicable to the subject, under all the evidence applicable to the question, such preference so given was a fair and legitimate one, one justified by the common law rule forbidding the carrier to give to one special privileges which it denies to another, but which, at the same time, does not exclude, as forbidden, contracts for transportation at a less rate, in special cases, where, under the circumstances, the discrimination appears reasonable.

It does not become necessary to pass upon the correctness or not, of the counter charges asked by the defendant and refused; it is sufficient that the charge of the court was erroneous, and was calculated to mislead the jury under a wrong test of defendant's liability. On another trial a charge properly applicable to the whole case can be given by the court under the law governing the case, and we deem it superfluous to pursue the investigation of this record any further.

We conclude the judgment ought to be reversed and the cause remanded.