STATE *v.* CENTRAL VERMONT RAILWAY COMPANY.

January Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed October 31, 1908.

*Railroads—Construction of Statutes—P. S. 4486—"Terms"—*
*"Reasonable and Equal"—Discrimination at Common*
*Law—When Allowed—Effect of P. S. 4486—Declaration*
*—Sufficiency.*

At common law a common carrier of freight was not bound to treat all
shippers alike, but only to carry for all at a reasonable rate; hence
it might make a reasonable discrimination in favor of any shipper
or class of shippers in circumstances that justified the preference,
as where the favored shipments were offered in larger quantities,
or under such other conditions that it cost less to transport them,
but the terms must not be unreasonably unequal; and whether the
rates charged are reasonably equal is a question of fact.

Although Congress has the power in respect of interstate commerce,
and a state legislature in respect of commerce within that state,
to prescribe the rates that common carriers shall charge for their
services, that power is limited by the requirement that the pre-
scribed charges shall not be so low as to deprive the carrier of a
reasonable compensation for its services, because that would amount
to the taking of property for a public use without just compensation,
and without due process of law.

In construing a statute that is one of several *in pari materia,* all
must be considered together.

In P. S. 4486, providing that carriers by railroad "shall give to all per-
sons reasonable and equal terms, benefits, facilities, and accom-
modations" for the transportation of freight and passengers, the
word "terms," like the words facilities and accommodations, re-
lates to all the incidents of transportation, and means rates or
charges; and the statute is merely declaratory of the common law,
not prohibiting all discriminations but only such as are not "rea-
sonable and equal," that is, are unreasonably unequal; hence a
declaration, in a suit against a railroad corporation for violation

of that statute, charging only that defendant, to plaintiff's damage, discriminated in favor of a specified person by transporting coal for it between specified points on defendant's road at fifty cents a ton less than it charged plaintiff or any other person, is bad on demurrer, for the rates charged, though unequal, may have been "reasonable and equal" within the meaning of the statute.

CASE for damage caused by alleged discrimination in freight charges in violation of P. S. 4486. Heard on general demurrer to the declaration at the September Term, 1907, Washington County, *Waterman,* J., presiding. Demurrer overruled, and declaration adjudged sufficient. The defendant excepted. The opinion states the material allegations. See last preceding case.

*C. W. Witters* and *H. H. Powers* for the defendant.

*Clarke C. Fitts,* Attorney General, for the plaintiff.

"In construing a remedial statute, its language, so far as is consistent with a fair construction of the law, should be so interpreted as to promote and advance the remedy." *McNulta* v. *Lockbridge,* 31 Am. St. Rep. 362; *National Bank* v. *Walsh,* 82 Am. St. Rep. 301; *Aylsworth* v. *Curtis,* 61 Am. St. Rep. 785; *R. R. Co.* v. *DeBush,* 13 Am. St. Rep. 221.

TYLER, J. This is an action on the case brought by the State of Vermont to recover of the defendant the damage that the plaintiff claims to have sustained by reason of the defendant's alleged violation of sections 3902 and 3904 of the Vermont Statutes. Section 3902 reads:

"A person or corporation operating a railroad shall give to all persons reasonable and equal terms, benefits, facilities and accommodations for the transportation of themselves, their agents and servants, and of merchandise and other property upon such railroad; and for the use of the depots, buildings and grounds thereof; and, at any point where such railroad connects with another railroad, reasonable and equal facilities of interchange."

Section 3904 provides that a person or corporation violating these provisions shall be liable to the party aggrieved

for all damages sustained by reason of such violation, in an action on the case.

The amended declaration alleges that ever since August 1, 1900, the defendant has owned and operated a railroad from Alburgh to Waterbury in this State; that the plaintiff has been obliged to buy and consume large quantities of coal for its Asylum for the Insane at Waterbury, which coal had to be shipped over said railroad from Alburgh, as that was a distributing point; that it was the defendant's duty to grant to all persons, including the plaintiff, equal terms and rates of freight for the carrying and shipment of coal over its road between said points; that in violation of its duty the defendant had granted to George Hall Coal Company, a corporation of Ogdensburg, New York, secret, lower and unequal terms for the carrying and shipment of coal over its road, between said points, than it had given to the plaintiff or to any other person or corporation, to wit, fifty cents per ton less, and that during all that time it had carried coal from Alburgh to Waterbury, for said company, at said preferred rates; that the plaintiff's only means of obtaining coal was by said railroad; that by means of said preference the George Hall Coal Company was able to, and did crush out and prevent competition in the business of selling and delivering coal at Waterbury, and the plaintiff has been compelled to and has bought all its coal of said Coal Company at fifty cents more per ton and has thus been aggrieved by the defendant's violation of the law and by its failure to grant to the plaintiff and others equal terms and rates of freight for carrying coal, and that an action has thereby accrued to the plaintiff under said statute.

The defendant having demurred to the amended declaration, the question is whether its allegations set out a cause of action under the statute.

At common law a common carrier of freight was not bound to treat all shippers alike. It was only bound to carry for every shipper at a reasonable rate. It might favor any particular shipper or class of shippers where the circumstances of the case warranted a distinction, as where the preferred shipper or class offered goods in larger quantities or under such conditions that they could be transported at less expense. But there is al-

ways the limitation that the discrimination in preferences must be reasonable, and the terms must not be unreasonably unequal.

It is equally well settled that it is within the power of a state legislature, with reference to commerce within the state, and of Congress, with reference to interstate commerce, to prescribe the rates to be charged by public carriers for their services, so long as the charges fixed do not require that the services rendered shall be without reasonable compensation. *Smyth* v. *Ames,* 169 U. S. 466, 42 L. ed. 819.

But it is held that, though the power of the Legislature to prescribe the charges of a railroad company is beyond question, it is not an unlimited power. It is not a power to destroy or to compel the doing of a service without reward, or to take private property for public use without just compensation or without due process of law. *Budd* v. *New York,* 143 U. S. 517, 36 L. ed. 247. See numerous cases cited in the opinion in *Smyth* v. *Ames,* 169 U. S. 523-525, 42 L. ed. 841; *Georgia R. & Bkg. Co.* v. *Smith,* 128 U. S. 174, 32 L. ed. 377; *Cleveland C. C. & St. L. R. Co.* v. *Closser,* (Ind.) 9 L. R. A. 754; *Louisville & N. R. Co.* v. *Com.,* 99 Ky. 132, 33 L. R. A. 209.

What was the legislative intent in this case?

In arriving at the intent of the Legislature, not only must the statute in every part be considered, but when there are several statutes *in pari materia,* they must all be considered together. The Legislature at the session of 1882, passed an Act, No. 37, which provides that: "A railroad corporation may establish for their sole benefit a toll upon all passengers and property carried on their railroad at such rates as are determined by the directors of the corporation, and may regulate such conveyance and transportation, the weight of loads, and other things in relation to the use of the road as the directors determine." This section provides, however, that the Supreme Court may, upon petition and hearing, alter or reduce the toll of any railroad operated in this State. This Act was approved November 28, 1882, took effect February 1, 1883, and gave the directors authority to fix the toll upon all property carried on their road. It now constitutes section 3896 V. S. Act No. 36 of that year, which is embodied in sections 3902, 3903 and 3904, was approved on the following day and took effect upon its passage. These two statutes passed at the same session and so

nearly contemporaneous must be construed together, or rather the later one must be construed in the light of the earlier one which needs no construction.

No. 36 is entitled, An Act to prevent unjust discrimination by railroad corporations. By its express terms it relates to discrimination in the transportation of persons, merchandise and other property by railroads. The words, "facilities and accommodations," obviously relate to the shipping, care and delivery of merchandise, in short, to all the incidents of transportation. If, as the defendant claims, the word "terms" is inapt to signify rates or charges, in common parlance it may have the same meaning in the sense in which people speak of the terms of a contract, meaning the things to be done and the compensation for doing them. "On reasonable terms" is a common expression, meaning the charges for services rendered or the price of goods sold and delivered. From the position of the word in the section and the adequacy of the other words to provide for the incidents of transportation, it is difficult to understand what other purpose the Legislature could have had in using it than the regulation of freight charges. That this was the purpose is further indicated by the language of the second section: "Two or more corporations whose roads connect shall not charge or receive for the transportation of freight to any station on the road of either of them a greater sum," etc. The second section further provides that: "In the construction of this section the sum charged or received for the transportation of freight shall include all terminal charges," etc. The regulation of charges for the transportation of persons and property seems to have been one purpose of the Act, whether the transportation is over one line or connecting lines of road.

That the word "terms" used in section 3902 providing that a person or corporation operating a railroad shall give to all persons reasonable and equal terms, benefits, etc., includes rates, is conclusively shown by section 3904 providing that section 3902 shall not be construed so as to prevent the issuing of excursion, mileage and commutation tickets, for the issuing of such tickets is certainly the fixing of rates for transportation.

The conclusion is therefore inevitable that the word "terms" in Act No. 36, V. S. 3902, includes charges for transportation. The requirements of that Act are not in conflict

with those of No. 37 which gives directors authority to fix rates subject to revision by this Court. Manifestly No. 36 was passed to enforce upon directors the obligation to make rates reasonable and equal, as required by the common law.

In considering these Acts, it must be observed that No. 36 contains the word "reasonable" as well as "equal." It reads: "Every person or corporation operating a railroad shall give to all persons reasonable and equal terms," etc.; therefore, the Act must be construed so as to give force and effect to both words, if possible.

The General Statutes of New Hampshire, Ch. 149, Sec. 2, contains a provision essentially like the statute upon which this action is brought. In *McDuffee* v. *P. & R. R. Co.*, 52 N. H. 430, 13 Am. Rep. 72, an action brought upon that statute, it was held that the statute was declaratory of the common law and not in derogation of it. The court said in the course of an elaborate opinion: "The common and equal right is to reasonable transportation service for a reasonable compensation. Neither the service nor the price is necessarily unreasonable because it is unequal in a certain narrow, strict, and literal sense; but it is not a reasonable service, or a reasonable price, which is unreasonably unequal."

The court said in *Concord & Portsmouth R.* v. *Forsaith*, 59 N. H. 122, 47 Am. St. Rep. 181: "Absolute equality in the price rate per ton for the carriage of all merchandise of the same description, over equal distances, is not required, but a price rate which shall be reasonably equal for all. By enacting that "the rates shall be the same for all persons, and for like descriptions of freight between the same points," the Legislature could not have intended an equality that is absolute, fixed and unvarying, if such equality is unreasonable. The court proceeded to say that the whole section must be considered in order to find the true construction; that the first clause, requiring that the rates shall be the same, is explained by the second clause, requiring that "all persons shall have reasonable and equal terms"; that, "Taken together, it is plain that no arbitrary rule of absolute equality, but one of reasonable and just equality, was intended." The court further said that custom, in all branches of business, always has been to move a large amount of a given commodity, in one parcel or in a given time,

at a less price per pound, yard or ton, than a smaller quantity
of the same commodity delivered in smaller parcels at different
times; that the expense of handling, carrying and storing the
smaller amount is greater, *pro rata,* than that of the same opera-
tions upon the larger amount in one body, and that a dis-
crimination in favor of the larger dealers is not inequality, but
reasonable equality.

In *Lough* v. *Outerbridge,* 143 N. Y. 271, 42 Am. St. Rep.
712, the court laid down the broad rule that when the con-
ditions and circumstances are identical the charges to all ship-
pers for the same service must be equal; but it was further held
that a carrier may lawfully depart from the standard or usual
rates if such rates are reasonable, and the deviation is in favor
of particular customers for special reasons not applicable to the
whole public.   That court went to the extent of holding that a
carrier may give reduced rates to customers stipulating to give
it all their business and refuse those rates to others who are not
able or willing so to stipulate, provided the charges exacted from
those not joining in the stipulation are not excessive or un-
reasonable; but it is not necessary to carry the rule to that ex-
tent in the present case.

In *Fitchburg R. Co.* v. *Gage,* 12 Gray 399, the court laid
down the rule of reasonable compensation, and said that if, for
special reasons, in isolated cases, the carrier sees fit to stipulate
for the carriage of goods or merchandise of any class for indi-
viduals for a certain time or in certain quantities for less com-
pensation than what is the usual, necessary and reasonable rate,
he may undoubtedly do so without thereby entitling all other
persons and parties to the same advantage and relief.

It was decided in *Concord & Portsmouth Railroad* v. *For-
saith, supra,* that a railroad company is not bound to carry large
and small quantities of the same kind of merchandise between
the same points at the same price.

The same rule is stated in *Avinger* v. *S. C. Ry. Co.,* 29
S. C. 265, 13 Am. St. Rep. 716.   See *Root* v. *L. I. R. Co.,* 114
N. Y. 300, cited in 11 Am. & Eng. Ency. 643, where in the notes
the rule is stated that a railway company may discriminate in
favor of companies shipping large quantities of freight; that
all discriminations are not necessarily unreasonable or unjust,
and that only those that are unreasonable or unjust are unlaw-

ful.    In the main case there was a discrimination in carrying
coal, and it was held that it could not be determined as mat-
ter of law that the discrimination was unjust.    In 6 Cyc. 498,
the rule is given that there may be a discrimination in rates
when founded on a reasonable difference in the conditions at-
tending the different shipments.    The rule is recognized in
*Sargent* v. *B. & L. R. Co.,* 115 Mass. 416, under a statute con-
taining the same requirements as our Act No. 36.

It may be considered a well established rule of the common
law that the carrier cannot be charged with allowing undue
preferences to a class of customers where the character of their
shipments justifies a distinction, and it is equally well settled
that what is reasonable equality in the rates for the carriage
of merchandise of the same description between the same points,
and whether the rates are reasonably equal, are questions of
fact.

Upon the authorities it must be held that V. S. 3902, Act
No. 36, is declaratory of the common law.    The only averment
in the declaration of a violation of the statute is that the de-
fendant discriminated in favor of the George Hall Coal Com-
pany by shipping coal for it between certain points on the de-
fendant's road, at fifty cents less per ton than it granted to
any other person or corporation or to the State of Vermont.
The fact that the rates charged in this case were less than those
charged to others does not entitle the plaintiff to a judgment,
for, as has been shown, the rates charged may have been rea-
sonable and equal within the meaning of the law, though less
in amount.

The demurrer admits the allegation that the plaintiff suf-
fered a loss of fifty cents per ton on coal purchased by it, which
brings it within the definition of "aggrieved person,"—one
whose rights have been injuriously affected.

*Judgment reversed; demurrer sustained; declaration ad-
judged insufficient; cause remanded.*