DIRECTOR GENERAL OF RAILROADS *vs.* PEOPLES EXPRESS, INCORPORATED, & others.

Suffolk. January 15, 16, 1920. — February 28, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, & JENNEY, JJ.

*Railroad. Express Company. Carrier. Corporation,* Officers and agents. *Contract,* What constitutes. *Agency,* Existence of relation.

A regulation, established by the Boston and Maine Railroad and continued in effect by the Director General of Railroads while in control of that railroad, which required of an express company, doing a local business upon trains of that railroad between Boston and Amesbury and Boston and Newburyport, that all shipments should be forwarded in baggage car service and that an express messenger must accompany each shipment and present for his personal transportation an express ticket, which differed from the ordinary season ticket only in the respect that it might be used by any person acting as messenger, was *held* to be reasonable and not in violation of the provisions of St. 1906, c. 463, Part II, §§ 196, 197.

The provisions of St. 1906, c. 463, Part II, §§ 196, 197, do not require that a railroad corporation should give to all persons, engaged in a local express business upon its trains under the conditions specified in § 197, absolutely equal terms, facilities and accommodations regardless of conditions, but require only that as to each such person such terms, facilities and accommodations as the railroad shall make shall be reasonable and equal in view of all the attendant circumstances and conditions.

A contract in writing recited that "Whereas, I, [naming the person whose signature was upon the contract] President of" a certain express company, "have made application for the privilege of doing an express business on the passenger trains of the Boston & Maine Railroad between" certain stations, that a receiver, who was operating the railroad, had granted "to me the aforesaid privilege," and "Now, Therefore, in consideration thereof, I do hereby covenant and agree as follows:" Then followed certain undertakings relating to indemnifying the receiver against claims "for damage to property carried by me under this agreement while on the premises of the railroad," and against claims for personal injuries, death or property damage made "by me or by my agents or servants" or "on account of my acts or omissions, or those of my agents or servants." There also was a further provision as to rules and regulations to be made and changed by the receiver, and as to termination of the contract after notice. The testimonium clause read: "In Witness Whereof, I have hereunto set my hand and seal," and it was signed without a seal by the president with his individual name. A master, to whom a suit involving the validity of the contract was referred, found, that the contract was signed as president of the corporation by one who was held out by the corporation and had acted as

its president, "and at the time he signed the contract was being so held out and acting," and that the corporation continued to do business under 'it. *Held,* that the contract was the contract of the corporation.

The contract above described contained a provision "That I will not ship or cause to be shipped any articles . . . unless accompanied by a messenger having an express ticket." The express company repeatedly and deliberately violated this provision. While in charge of the operation of the railroad corporation, in May, 1919, the Director General of Railroads notified the express company that all its privileges of doing business on the trains of the railroad were terminated. The express company refused to recognize the notice as binding. *Held,* that the Director General in a suit in equity was entitled to a decree enjoining the corporation from further use of the lines of the railroad in question.

In the same suit, the express company filed a cross bill seeking a mandatory injunction compelling the Director General to permit it to use the railroad in the course of its business, contending that the regulations in question were discriminatory and unfair to it. In dismissing the cross bill, this court did so without prejudice to the right of the express company, if any, to apply to the Department of Public Utilities for a revision of the regulation, if so advised.

BILL IN EQUITY, filed in the Supreme Judicial Court on July 16, 1919, by the Director General of Railroads, against Peoples Express, Incorporated, a corporation carrying on the business of transporting express matter between Boston and Newburyport and Boston and Amesbury on the lines of the Boston and Maine Railroad, Charles J. McCarthy, alleged to be the treasurer of that corporation and "actively engaged in its management and operation," and Howard J. Pike, alleged to be an employee of that corporation. The prayers of the bill in substance were that the defendants be enjoined from conducting the express business of the corporation over the lines of the Boston and Maine Railroad because of violations of reasonable rules and regulations of the plaintiff and of the contract between the plaintiff and the defendant corporation; also a

CROSS BILL OF COMPLAINT, filed on July 18, 1919, and afterwards amended, by Peoples Express, Incorporated, alleging unreasonable and illegal interference by the Director General with the conduct of its express business, and seeking a mandatory order "which shall secure to it the privilege of doing its express business on the passenger trains of the" railroad "upon terms and with facilities and accommodations which shall be reasonable and equal to those furnished to other companies doing business over the . . . railroad."

The defendant Pike, previous to the filing of the bill of complaint,

had ceased to be an officer of or a stockholder in the defendant corporation.

The bill and cross bill were referred to a master. It appeared that, for a period beginning at least as far back as the year 1880, the railroad company had established rules and regulations governing the conduct of local express business, which rules and regulations were known to and had been complied with by all persons and companies doing local express business on this line or system. Among those rules and regulations were the following: "All shipments will be forwarded in baggage-car service and must be delivered to Station Baggage Master sufficiently in advance of train time to be properly weighed and way-billed. Express Messenger must accompany each shipment and present an Express Ticket to cover his personal transportation."

The material portions of the contract between the receiver of the Boston and Maine Railroad and the defendant corporation were as follows:

"Whereas, I, Howard I. Pike, President of Peoples Express have made application for the privilege of doing an express business on the passenger trains of the Boston & Maine Railroad between stations outlined below and

"Whereas, J. H. Hustis, Temporary Receiver of the said Boston and Maine Railroad, in so far as he lawfully may, has granted to me the aforesaid privilege, together with the usual facilities for doing such business, the use and enjoyment of which is hereby acknowledged,

"Now, Therefore, in consideration thereof, I do hereby covenant and agree as follows:

"1. That I will not ship or cause to be shipped any articles unless properly weighed and billed by the proper railroad employes, and unless accompanied by a messenger having an express ticket, the form of which is attached hereto, and that all such property shall be handled by me or by my agents or servants at both ends of the route.

"2. That I will indemnify and hold harmless said J. H. Hustis, Temporary Receiver, and the Boston and Maine Railroad, their successors or assigns, against any and all claims for damage to property carried by me under this agreement while on the premises of the railroad and against any and all claims for property damage,

injury to or death of any person, which may be made by me or by my agents or servants, for accidents occurring while on the premises of the railroad under the terms of this agreement; also against any and all claims which may be made on account of my acts or omissions, or those of my agents or servants, while on the premises of the railroad under the terms of this agreement.

"It is understood and agreed that the methods and regulations regarding express traffic may be changed by the said J. H. Hustis, or by the Boston and Maine Railroad, their successors or assigns, as they see fit, and I hereby agree to conform to such methods and regulations. It is further agreed that contracts may be made covering express traffic to any and all of the stations of the railroad and that the aforesaid privilege which has been granted me may be terminated at any time by thirty (30) days' notice in writing given by said J. H. Hustis, or by his successors, of intention to terminate.

"In witness whereof, I have hereunto set my hand and seal this second day of January 1918.

Boston & Amesbury
Boston & Newburyport
Boston & Ipswich
Ipswich & Newburyport

[Signed]    Howard I. Pike"

"witness: —
    Walter S. Bean"

The master's findings as to this contract were as follows:

"In January, 1918, because the Boston and Maine Railroad was in the hands of a receiver, the receiver, in the fall of 1917, prepared a uniform form of contract and caused it to be presented to all local expressmen and companies for signature. There are eighteen such persons and companies.

"This contract was in the form previously existing, with the addition of a new provision that any express privilege might be terminated by the receiver at any time upon thirty days' notice given by him in writing. . . .

"This new form of contract had been presented to, and signed by, one Howard I. Pike as president of the Peoples Express Company, on January 2, 1918, and the company continued to do business under it.

"There was contention by the defendant that said Pike was not in fact president of the company and had never been duly elected to that office; also that his act in signing the contract was void and *ultra vires,* as the matter of the contract had not been considered or passed upon by the directors of the company. The records of the company were not produced, and it was said none could be found bearing on Pike's election. A copy of the by-laws was produced, which provided that the president and treasurer should jointly sign all formal documents.

"It appeared in evidence, however, that he was held out by the company and had acted as president, and at the time he signed the contract was being so held out and acting, and I so find and report."

Other material findings of the master and exceptions to his report are described in the opinion. The exceptions were heard by *Carroll,* J., by whose order interlocutory decrees were entered overruling the exceptions, confirming the report and reporting the case for determination by the full court.

St. 1906, c. 463, Part II, §§ 196, 197, are as follows:

"Section 196. Every railroad corporation shall, subject to the provisions of section two hundred and one, give to all persons reasonable and equal terms, facilities and accommodations for the transportation upon its railroad of themselves, their agents and servants, and of their merchandise and other property and for the use of its depot and other buildings and grounds; and, at any point where its railroad connects with another railroad, it shall give reasonable and equal terms and facilities of interchange.

"Section 197. The provisions of the preceding section shall apply to all persons engaged only in a local express business for the forwarding of express matter between points within the Commonwealth in the trains or cars of any railroad corporation, and to persons desiring to engage therein who obtain the recommendation of the board of railroad commissioners therefor, and who agree in writing to indemnify the corporation against all loss of and damage to any property which is carried by them on its trains. Such recommendation shall be given only after notice to all parties interested and a hearing thereon, and with regard, among other considerations, to the public interest. Such corporation may contract with one or more persons for the express service over its railroad or system, subject to the rights of such persons as may then

be engaged in, or shall have obtained the recommendation afore-said to conduct, such local express business thereon between points within this Commonwealth under the provisions of this section; and the terms, facilities and accommodations provided for such last named persons shall not be unreasonable or unequal, having regard to the amount and character of the service and also to such reasonable regulation of said business as may be for the public interest and the efficient operation of the railroad. The provisions of this section shall not deprive any railroad corporation of any right which it has under its charter or under general laws, to perform all the transportation of property upon its railroad. The Supreme Judicial Court or the Superior Court shall have jurisdiction to enforce the provisions of this section by injunction, mandamus or other suitable process."

*W. A. Cole*, (*F. N. Wier* with him,) for the plaintiff.

*J. H. Duffy*, for the defendants.

DE COURCY, J. This bill in equity is brought by Walker D. Hines, Director General of Railroads, now operating the Boston and Maine Railroad under federal control, and asks that the defendants be enjoined from conducting a local express business between Boston and Newburyport, Amesbury or elsewhere on that railroad. The defendant Pike has no interest in the proceedings. The defendant McCarthy is manager and sole stockholder of the corporation. By reason of their identity of interest the defendants will be referred to collectively as ."the defendant." The only traffic involved is that carried in passenger trains.

Among the rules and regulations established by the railroad corporation governing the conduct of local express business is the following: "Express Messenger must accompany each shipment and present an Express Ticket to cover his personal transportation." This differs from the. ordinary season ticket only in the respect that it may be used by any person acting as messenger. The rule has been in effect for more than forty years, is well known, and is observed by all of the eighteen local express companies operating on this line or system.. In May, 1919, the plaintiff's officials discovered that the defendant was not complying with this rule, but was making shipments unaccompanied by a messenger, and they notified said McCarthy of the fact. He steadily refused to comply; and on May 29 notice was duly served on the

defendant, to become effective July 1, terminating all the privileges of doing express business on the plaintiff's passenger trains.

Since that time the plaintiff has refused to recognize the defendant, and to sell messenger tickets to it. The defendant McCarthy has insisted on transporting express shipments of the company without complying with the rule as to a messenger; and he and its employees have placed its express matter in the cars by force and in defiance of the plaintiff's agents, who have tried to prevent them from so doing. Since July 1, 1919, McCarthy and employees of the defendant corporation also have been riding on the plaintiff's passenger trains without paying any fare, tendering a promise to pay on receipt " of the so called Expressman's ticket."

At the hearings before the master, the defendant contended that it was not required to comply with the rule, because it had acquired "vested rights" by purchasing certain "express franchises," so called, that had been granted prior to St. 1894, c. 469. If this contention is now pressed, it is disposed of by the findings of the master, one of which is that the purchaser of a business with a "franchise," when recognized by the railroad corporation, was given a franchise "subject to the requirements as to compliance with the rules and regulations," and another, that ". . . the 'rights' existing prior to the Act of 1894 were individual rights, granted upon condition that the rules and regulations were complied with, terminable upon failure to comply."

The main contention of the defendant seems to be, that the plaintiff is violating the letter and spirit of St. 1906, c. 463, Part II, §§ 196, 197, 201, in the making and enforcement of said rule, and for that reason cannot compel the defendant to comply with it. The statute (§ 197) contemplates that local expressmen who obtain the recommendation of the commissioners shall be provided with terms, facilities and accommodations that "shall not be unreasonable or unequal, having regard to the amount and character of the service and also to such reasonable regulation of said business as may be for the public interest and the efficient operation of the railroad." Plainly it is proper to provide that shipments of express matter on passenger trains should be in charge of a messenger, for the protection of the goods themselves, and for the prompt and convenient transportation of the passengers and their baggage, to which the express business on passenger trains is sub-

ordinate. *Sargent* v. *Boston & Lowell Railroad,* 115 Mass. 416. *Express Cases,* 117 U. S. 1, 23. The master reports: "If it is proper for me to pass upon it as matter of fact, I find and report that the rule is a reasonable one, and is based on the proposition that the railroad is to be protected from damage to the express matter of others in the same car by the express matter of the defendant, or by the negligence of the defendant's agents, and is not to be held liable to shippers of goods by express for anything except its own negligence, or held to have assumed any such liability." And manifestly the defendant cannot compel the railroad corporation to make its baggagemen act as messenger employees of the express company.

The alleged discrimination made by the plaintiff affords no justification for the defendant's refusal to comply with the long established rule as to messengers. The American Railway Express Company is not "engaged only in a local express business," but embraces the four large interstate express companies. Further, its contract with the plaintiff is an elaborate one of eight printed pages; it has large express cars attached to trains in which no express matter but its own is carried; and when it is permitted at times and on light runs to use the train baggagemen as its messengers, it pays them extra compensation, or reimburses the railroad corporation for their time. It competes with the defendant in the Newburyport business, but pays a rate of $.412 per one hundred pounds as against $.35 paid by the Peoples Express, Inc., for the same service. The other alleged violation of equality of treatment is in the case of Thompson's Express. As to this the master reports: "A company called Thompson's Express does a local business between Boston and Worcester. It does a very large business and has a contract with the railroad corporation under which it pays forty per cent of its gross receipts from its express business, instead of paying the railroad tariff per one hundred pounds. Its business is so large that it requires an express car of its own, which is placed in the station by itself, and into which the company loads its express matter directly without its being previously weighed or way-billed by the station baggage master. When loaded it is attached to a train and hauled to Worcester. It purchases a messenger's ticket and the messenger accompanies its shipments. Its volume of business is such that it pays to the rail-

road an average of eight hundred dollars ($800) a month, and the weight of its express matter is seven thousand (7000) to eight thousand (8000) pounds a day. The Peoples Express Company ships local express matter on passenger trains usually on Saturdays, although occasionally it ships on other days in the week; its average weight is less than five hundred (500) pounds and its average payment to the railroad varies from seventeen dollars ($17) to thirty dollars ($30) a month."

The statute does not require absolute equality, regardless of conditions. The terms and accommodations provided must not be unreasonable or unequal, "having regard to the amount and character of the service and also to such reasonable regulation of said business as may be for the public interest and the efficient operation of the railroad," in the language of the statute. See *Spofford* v. *Boston & Maine Railroad*, 128 Mass. 326. The master has found: "31. In view of the comparative amount of business of the different expresses doing business on the Boston and Maine Railroad and all the surrounding circumstances, the plaintiff gives to all such expresses reasonable and equal terms, facilities, and accommodations." *Manufacturers Railway* v. *United States*, 246 U. S. 457, 481. *State* v. *Central Vermont Railway*, 81 Vt. 463.

On the findings of the master, the defendant's contentions, both in its answer and cross bill, might well be disposed of by saying that its only right to conduct a local express business was under its contract of January 2, 1918, and that this contract has been properly terminated. The agreement was "signed by, one Howard I. Pike as president of the Peoples Express Company, on January 2, 1918, and the company continued to do business under it." As to the contention that Pike was not in fact president, the master finds that "he was held out by the company and had acted as president, and at the time he signed the contract was being so held out and acting." *Hartford* v. *Massachusetts Bowling Alleys, Inc.* 229 Mass. 30. *Beacon Trust Co.* v. *Souther,* 183 Mass. 413. The contract was in the form previously existing, with the addition of a new provision, (inserted in the uniform contract prepared by the receiver, Mr. Hustis,) that it might be terminated by the receiver at any time upon thirty days' written notice. This clause need not be considered, as it is not material in the present case. One of the stipulations was, "That I will not ship or cause to be

shipped any articles . . . unless accompanied by a messenger having an express ticket, the form of which is attached hereto. . . ." In view of the deliberate and repeated breaches of this provision, the plaintiff was justified in terminating the contract as he did. *Ballou* v. *Billings,* 136 Mass. 307.

What has been said disposes of the defendant's material exceptions, aside from those taken to the master's findings or refusal to find, which we cannot review in the absence of the evidence. The right to conduct a local express business between Boston, Hamilton, Wenham and stations on the Essex branch, and on the so called Georgetown branch, claimed in the cross bill, has been abandoned if it ever existed, — according to the master's findings. Evidence as to the rules and regulations in force on the New York, New Haven, and Hartford system was rightly excluded as immaterial to the issues in this case.

The bill is to be dismissed as to Howard I. Pike. In view of the conduct of the other defendants in persistently placing shipments on trains by force, and against the physical opposition of the plaintiff, and in having the employees of the express company ride on trains without paying any fares, an injunction is to issue in conformity with the second and third prayers of the plaintiff's bill, but confined to the Boston and Maine Railroad system, and with costs. *Boston & Maine Railroad* v. *Sullivan,* 177 Mass. 230. 13 L. R. A. (N. S.) 173, note. The cross bill must be dismissed; but without prejudice to the right, if any, of said defendants to apply hereafter to the Department of Public Utilities, successor of the public service commission, if so advised.

*Ordered accordingly.*