STATE v. JAMES WATSON.

May Term, 1926

Present: POWERS, SLACK, and FISH, JJ., and GRAHAM, Supr. J.

Opinion filed October 6, 1926.

*Intoxicating Liquors—Jury Question—Waiver of Right to Have
Answer Stricken Out—Proof of Intoxicating Character of
Liquid—Admission of Respondent—Impeachment of Wit-
ness—Evidence Tending to Characterize Liquid, Place and
Business—Cross-examination.*

1. In prosecution for unlawfully manufacturing and possessing in-
toxicating liquor, whether appliance, found concealed in woods
adjoining respondent's premises, was respondent's or under his
control, and might be used in manufacture of intoxicating
liquor, *held* for jury.

2. Right of respondent, if any, to have answer of witness, character-
izing certain appliance found concealed in woods adjoining
respondent's premises, stricken out, *held* waived by failure to
make motion to strike, after witness on both direct and cross-
examination had admitted that he did not know what appliance
was, until conclusion of cross-examination consisting of numer-
ous questions and answers.

3. Intoxicating character of liquor is not exclusively subject of as-
certainment by chemical analysis, but may be established by
testimony of a general nature, or by non-expert opinion of
those shown to be properly qualified.

4. In prosecution for unlawfully manufacturing and possessing in-
toxicating liquor, admissions and testimony of respondent *held*
sufficient to take case to jury on questions whether liquor was
intoxicating and intended for beverage purposes.

5. In such prosecution, where respondent's wife had testified that
liquid found on his premises was for purpose of making
vinegar, and that there was no intent or purpose to use it as
a beverage, cross-examination as to whether she had not made
statement to officer making seizure that in these times when
a person could not get beer or wine they had to have some-

thing, *held* not objectionable under G. L. 1894, and properly admitted for purposes of impeachment.

6. In such prosecution, where respondent's wife had testified that liquid found on his premises was for purpose of making vinegar and that there was no intent or purpose to use it as a beverage, and had denied having made statement to officer indicating that it was being made to take the place of wine or beer, *held* that officer was properly permitted to testify as to her statement to him, over objection that it was an attempt to impeach witness on a collateral and immaterial issue, as statement was directly contradictory to and inconsistent with her testimony as to the purpose of making liquid, and had strong tendency to impeach and destroy force of witness' testimony respecting main issue of case.

7. In such prosecution, where it appeared that during search of respondent's premises, his wife had poured out contents of bottle and attempted to tear off its label, and such bottle was seized and produced and received in evidence at trial without objection, testimony that man from whom bottle and contents were obtained was "a drinking man," *held* admissible as tending to show character of contents of bottle, and, with other evidence in case, as tending to characterize place and business there carried on.

8. In such prosecution, cross-examination of respondent and his wife as to manufacture of cider by or for respondent and his traffic in same, *held* proper as bearing upon veracity of respondent's defense that liquid made from corn found on his premises was for vinegar, and to show his motive, intent, and purpose in manufacturing liquid in question.

INFORMATION charging respondent with unlawfully manufacturing and possessing intoxicating liquor. Plea, not guilty, Trial by jury at June Term, 1925, Orange County, *Moulton,* J., presiding. Verdict of guilty, and judgment thereon. The respondent excepted. The opinion states the case. *Exceptions overruled.*

*Shields & Conant* for the respondent.

*H. W. Hastings,* State's Attorney, for the State.

GRAHAM, Supr. J. The respondent is charged by information with unlawfully manufacturing and possessing intoxicating liquor.

On June 17, 1925, the officers searched the respondent's premises and found in a closet upstairs and adjoining the room in which the respondent's children slept, a quantity of corn and liquid in a barrel and two other containers; the liquid was at the time in an active state of fermentation. The containers and contents were seized and received in evidence at the trial. Also from one hundred fifty to two hundred pounds of used corn were found spread out on the barn floor as if to dry.

[1] On July 3, 1925, the officers made a further search of the respondent's premises and found in the woods on land adjoining the respondent's premises, and concealed under some cut bushes, a copper boiler, which the State claimed was a still, or an appliance adapted for distilling intoxicating liquor. It was offered and received in evidence in connection with the testimony of the officer who conducted the search and made the seizure, subject to the exception of the respondent that it had not been connected with him in any way. It was then offered and received for the purpose of establishing the fact of the respondent's guilt. No exception was taken to this last ruling. However, we treat the question as though exceptions were saved to all rulings thereon. This article was made of copper, circular in shape; it had two compartments, the inner compartment being cone-shaped, and had a loose fitting copper cover from which protruded, through an opening in the outer compartment, a copper tube several inches long and about one-fourth inch in diameter. Its shape, size, and construction would indicate its adaptability for condensing or distilling purposes. The evidence showed these facts: That the place where it was found by the officers was back of the respondent's house and about forty-five rods therefrom; that it was from twenty to twenty-five feet from the boundary of the respondent's land; that there was a path leading from the respondent's house to and a short distance into the woods and to the place where the article was found concealed; that the respondent's children played near where the path enters the woods; that empty cans and other material had been dumped at the edge of the woods and near the boundary of the respondent's land; and that the respondent's house was the nearest house to the place where the appliance was

found. Moreover, it appeared that at the same search on July 3, the officers found in a cupboard in the cellar of the respondent's house, a rubber hose several feet long and one-fourth inch in diameter, which had a copper attachment at one end which fitted into the copper tube protruding from the side of the copper boiler, and had the appearance of being a part of the same mechanism. This rubber tube was already in evidence without objection. Also a quantity of empty bottles was found in a back room in the respondent's house. These circumstances were sufficient to *prima facie* connect the respondent with the exhibit, and make it a jury question whether the appliance was the respondent's or under his control, and might be used in the manufacture of intoxicating liquor. *State* v. *Suiter,* 78 Vt. 391, 63 Atl. 182; *State* v. *Ryder,* 80 Vt. 422, 68 Atl. 652.

[2]    The State's attorney in his opening statement to the jury stated in reference to the search of July 3, that ''there was then found in the woods under a brush heap adjoining, or close to the respondent's premises, a still which will be produced here.'' No objection was made by respondent to this statement. During the direct examination of the officer, who conducted the search, the following appeared: ''Q. What did you find, if anything? A. Found a still. Q. Have you that still here? A. Yes sir. Q. Will you produce it? (Apparatus produced.) Q. Where did you find this still?'' Counsel for respondent then stated: ''I think that is a characterization, I don't think they can characterize whatever it was. He can show us what he found, it is for the jury to say what it was.'' The court told the State's attorney that he might ask the witness ''where he found this piece of mechanism without characterizing it,'' and the examination proceeded without any exception being taken. Later during the same examination in answer to questions by the court the witness stated that he did not know what the article was; to the same effect were witness' answers on cross-examination. But after this appeared, counsel for respondent continued his examination of the witness consisting of thirty-four questions and answers, and at the close of the cross-examination, moved that the answer be struck out wherein the witness said he found a still in the woods. The court ruled that it might stand, and the respondent was allowed such exception as he was entitled to. It was not error for the court to allow this answer to stand. *Rollins* v. *Chalmers,* 51 Vt. 593. The respondent had

waived his right, if any, to have this evidence stricken out. *Mc-Clary* v. *Hubbard*, 97 Vt. 222, 244, 122 Atl. 469; *Edmunds Brothers* v. *Smith et al.*, 95 Vt. 396, 401, 115 Atl. 187; *In re Estate of Clogston*, 93 Vt. 46, 55, 106 Atl. 594.

· At the close of the State's evidence and again at the close of all the evidence, the respondent moved for a directed verdict in his favor. The motion is based generally upon the insufficiency of the evidence to warrant submitting the question of respondent's guilt to the jury, except one ground, which is: "That there is no evidence, or at most insufficient evidence, to go to the jury on the question of whether or not this liquid contained more than one-half of one per cent." This is the only ground of the motion which requires discussion.

The respondent's defense was that the liquid found by the officers at the search of June 17, as above stated, was for the purpose of making vinegar and not for beverage purposes; that the manufacture of this liquid into vinegar was innocent and lawful. See Sec. 6 of No. 204 of the Acts of 1921. This was the theory upon which the case was tried and submitted to the jury. The State's evidence upon which it based its claim that this liquid was intoxicating liquor manufactured and possessed by the respondent for beverage purposes consisted of admissions by the respondent. The respondent when asked by one of the officers at the search, "What are you going to do with that stuff you have up in the closet?" replied, "I am going to drink it." Later in the State's attorney's office the respondent said that "He would guarantee it (the liquid) would test more than one-half of one per cent." It is a fair inference that the respondent had in mind and referred to such a test as the statute provides, that is, "by volume at sixty degrees Fahrenheit." The respondent at the trial did not directly deny making this admission, but testified that he still thought the alcoholic content of the liquid was more than one-half of one per cent.

[3, 4] Chemical analysis is not the exclusive method of ascertaining the intoxicating character of liquor. *State* v. *Abraham*, 158 La. 1021, 105 So. 50. The fact may be established by testimony of a general nature (*State* v. *Dennison*, 85 W. Va. 261, 101 S. E. 458, 460), or by the non-expert opinion of those shown to be properly qualified (*State* v. *Abraham, supra; Lewinsohn* v. *United States* [C. C. A.] 278 Fed. 421, 425; *Heitler* v. *United States*, 280 Fed. 703. The admissions and testimony

of the respondent, in the circumstances here shown, were sufficient to take the case to the jury on that issue.

[5]    The respondent's wife was improved as a witness for the respondent, and aside from the respondent himself was the only witness for the defense.    She testified fully in her direct examination as to the ingredients and method of manufacture of the liquid in question, and stated that it was prepared for the purpose of making vinegar, and that there was no purpose or intention of using any of it for a beverage.    On cross-examination she was asked if on the night of June 17 she did not state to Mr. Dearborn (the officer conducting the search) that in these times when a person could not get beer or wine to drink that they had to have something, and, subject to the exception of the respondent that the statute (G. L. 1894) made her incompetent to testify to statements made to her husband or to another person, the question was allowed solely as a matter of impeachment of the witness, and the witness denied making the statement.    Manifestly, the statute has no application and this exception is without merit.

[6]    A similar question was allowed for the same purpose, subject to the exception of respondent that it was raising an immaterial issue; that the State had made the witness its own and was bound by her answers.    Later in the trial the State called Mr. Dearborn as a witness and subject to the exception of the respondent that it was an attempt to impeach the witness on a collateral and immaterial issue, he was permitted to testify for the purpose of impeaching Mrs. Watson, that she did make such a statement to him.    This statement was directly contradictory to and inconsistent with her sworn testimony that the liquid was for the purpose of making vinegar, and that there was no intent or purpose to use it as a' beverage.    It had a strong tendency to impeach and destroy the force of the testimony of this witness respecting the main issue in the case, and the evidence was properly admitted for that purpose.    The court in its charge carefully and correctly told the jury how to apply this evidence.

[7]    It having appeared that during the search of July 3, the respondent's wife was observed in the act of disposing of a bottle and its contents; that the contents were poured out by her; and, while she was attempting to tear off the label from the bottle, it was seized, and produced at the trial and received in evidence without objection.    Mrs. Watson testified on direct ex-

amination that the bottle and contents belonged to "McLaughlin," "a man who was at the house"; that she poured out the contents but did not know what they were. Having further testified on cross-examination that McLaughlin had offered to and did take the respondent to Barre that day and that just before starting the respondent took the bottle from McLaughlin's car and told her "to take it to the dump," the witness was asked this question: "Q. Mr. McLaughlin is a drinking man, isn't he?" and, subject to respondent's exception that it was immaterial and irrelevant, answered, "My judgment would be that he was." This was properly permitted to be shown. It tended to show the character of the contents of the bottle, and in view of what had already appeared, to characterize the place and the business there carried on. *State* v. *Avicolli,* 92 Vt. 287, 102 Atl. 1037; *State* v. *Pierce,* 88 Vt. 277, 92 Atl. 218; *State* v. *Krinski,* 78 Vt. 162, 166, 62 Atl. 37.

[8] The respondent by several exceptions raises the question that the court erred in allowing the respondent and his wife to be cross-examined as to the manufacture of cider by the respondent or manufactured for him from his apples, and his traffic in same. The point of these exceptions is that it is a different charge than the one alleged. The record shows that these facts were permitted to be brought out on cross-examination as bearing upon the veracity of the respondent's defense and to show his motive, intent, and purpose in manufacturing the liquid in question. It tended to render less probable his claim that he was making this liquid into vinegar. See *State* v. *Donaluzzi,* 94 Vt. 142, 109 Atl. 57, and cases there cited. These exceptions are without merit.

The exceptions to the charge are disposed of by our disposition of other exceptions.

*Judgment that there is no error in the proceedings, and that the respondent take nothing by his exceptions. Let execution be done.*