## No. 11,837.

### STEWART *v*. THE PEOPLE.

Decided January 30, 1928.

Plaintiff in error was convicted of violating the game statutes.

### *Affirmed.*

1. CRIMINAL LAW—*Possession of Property.* Having the carcass of game "in possession," within the meaning of the game statute, does not necessarily mean having it on the defendant's person.

2. *Conspiracy—Killing Game.* Where three persons conspire to violate the game statute by killing deer, and co-operate in committing the unlawful acts, all are equally guilty although one of defendants may not have actually killed any of the animals.

3. *Former Acquittal.* The fact that a person charged with a violation of the game statute was acquitted of killing one deer, does not sustain a plea of former acquittal in a subsequent case, in which he is charged with killing another deer on the same occasion, where he with two others were engaged in a conspiracy to violate the game statute, and in pursuance of such conspiracy one of his co-conspirators killed one deer, and the other of his co-conspirators killed the other deer.

4. *Accessory During the Fact.* It is not the law that an accessory during the fact shall be deemed and considered as principal and punished as such.

5. *Instructions.* It is not every error in instructions that requires a reversal. Where defendant's guilt is proven by conclusive evidence and his substantial rights are not prejudiced by the giving of an instruction which is in part erroneous, the judgment will not be reversed on that ground.

*Error to the County Court of Gunnison County, Hon. Sprigg Shackleford, Judge.*

Mr. GEORGE A. SHIPLEY, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. WILLIAM W. GAUNT, Assistant, for the people.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE defendant was convicted on two counts of an information. The first charged him with unlawfully killing "a large, eleven point buck deer"; the second, with unlawfully having in his possession "a portion of the carcass of a large buck deer, to-wit, the head with eleven point horns." He was sentenced to imprisonment for six months and to pay a fine of $500. The uncontradicted evidence is to the following effect: On December 2, 1926, the defendant and two other men (Herbert Axtell and Ray Shipley) met and agreed to go deer hunting the next day; in other words, they conspired, confederated, and agreed together to hunt, and if possible kill, deer, in violation of the law. The next day, pursuant to agreement, the three met at the appointed place. All had fire arms and ammunition. They proceeded in Axtell's automobile, Axtell driving, to what the witnesses call the Lost Cañon country, the place selected for the hunt. The defendant directed Axtell to the place. When they arrived, it was agreed that the defendant would proceed along the ridge, or high ground; that Axtell would take a route a little lower down; and Shipley, the bottom of the slope, or the gulch. They carried out this plan in conducting the hunt. Axtell killed a "large, eleven point buck deer"; Shipley killed a small buck deer; the defendant was unsuccessful—he personally killed nothing. About 4 o'clock in the afternoon the defendant and Axtell, who theretofore had been separated, met at the place where they had left the automobile. They proceeded in the automobile to a place nearer to the carcasses of both deer, where they met Shipley. The three then removed the carcass of the small

deer and the severed head of the large deer to the automobile, the defendant dragging the former, and Axtell and Shipley carrying the latter. After it had become dark, Axtell, realizing that they "shouldn't bring the head into town," asked what should be done with the head of the large deer. The defendant at first suggested that they hide it somewhere in the cañon; but later agreed with the others that it would be better to hide it in an old shack near the mouth of the cañon. They hid the head in the shack, where later it was found by the deputy game warden. Axtell and Shipley pleaded guilty to unlawfully killing deer, and paid the fines assessed against them.

1. That the defendant is guilty of both charges made against him, is clear. The fact that he personally did not kill the large deer is unimportant; so also is the fact that he did not personally carry the head of the large deer to the automobile. Having it "in possession," does not mean having it on his person. The defendant and his associates had agreed and conspired to do, and were co-operating in doing, unlawful acts. The act of each in carrying out such unlawful purposes was the act of all, and all are equally guilty. *Reagan v. People,* 49 Colo. 316, 112 Pac. 785; *Smith v. People,* 1 Colo. 121; *Mow v. People,* 31 Colo. 351, 72 Pac. 1069; *Andrews v. People,* 33 Colo. 193, 79 Pac. 1031, 108 Am. St. Rep. 76.

Two errors are assigned; first, the sustaining of a demurrer to the defendant's plea of former acquittal, and, second, the giving of instruction No. 3.

2. The defendant had previously been charged with and tried for the killing of the small buck deer—the one shot by Shipley—and was acquitted. That acquittal was pleaded as a bar to the present prosecution. A demurrer to the plea was sustained. It is said that the evidence given at the defendant's trial on the former charge was identical with the evidence given at his trial on the present charge. That is substantially true. The defendant relies for a reversal upon *Carson v. People,* 4 Colo. App.

463, 36 Pac. 551, and similar cases. It is not necessary to express approval or disapproval of those cases, for the reason that they are not applicable to the facts in the present case. In the Carson case, the defendant fired, in rapid succession, several shots, each being fired at one Richards, with intent to hit Richards, and him alone. One of the shots fired at Richards hit and killed the wife of Richards. The hitting of Mrs. Richards was purely accidental. The defendant was charged with the murder of Mrs. Richards, and was convicted of involuntary manslaughter only. Later, he was prosecuted for a felonious assault upon Richards, and, in a plea of former acquittal, the defendant alleged, in substance, that the assault charged and the alleged assault that resulted in the death of Mrs. Richards were one and the same transaction. This, the demurrer admitted to be true. The court of appeals held that, in finding the defendant guilty of involuntary manslaughter only, the jury in the murder case necessarily found that the defendant, in firing the shots, did not have a felonious intent; and, therefore, the court held that the plea of former acquittal was good. There was one transaction, one intent, one violation. The present case is not at all similar to the Carson case. Here, Shipley, one of the accomplices of the defendant, shot at, intended to hit and kill, and actually hit and killed, a small buck deer; Axtell, his other accomplice, shot at, intended to hit and kill, and actually hit and killed, another deer, namely, a large buck deer. There were separate and distinct acts, intents and violations on the part of two separate and distinct persons. The defendant is responsible for the separate unlawful acts because he was a party to the conspiracy, in the prosecution of which the unlawful acts were committed. The facts in the present case more nearly resemble those in *In re Allison,* 13 Colo. 525, 22 Pac. 820, 10 L. R. A. 790, 16 Am. St. Rep. 224, where we held that indictments for robbing different passengers upon the same stage charge distinct offenses, and that separate trials and convictions

may be had thereunder. We called attention to the fact that even if the robberies may be regarded as a single act, they affected separate objects; and we quoted with approval the holding in *Fox v. State,* 50 Ark. 528, 8 S. W. 836, that "where one unlawful act operates on several objects, there may be several offenses committed, and so several prosecutions for the same criminal transaction, and an acquittal or conviction for one such offense will not bar a prosecution for the other."

The demurrer to the plea was properly sustained.

3. Instruction No. 3 is as follows:

"You are further instructed that the Statutes of the State of Colorado provide that an accessory to the violation of any provision of the Legislative Act under which the prosecution in this case is instituted may in all cases be prosecuted and punished as a principal. And that in such cases the law provides that the accessory shall be charged as a principal in the information. This means that the information may describe the crime in the same language as if the defendant were the principal.

"You are further instructed that the Statutes of the State of Colorado define an accessory to be he or she who stands by and aids, abets or assists, or who, not being present in aiding, abetting or assisting, hath advised and encouraged the perpetration of the crime. An accessory during the fact is a person who stands by without interfering or giving such help as may be in his or her power to prevent a criminal offense from being committed.

"You are further instructed that if you believe beyond a reasonable doubt from all the evidence in this case, that the defendant was an accessory, as above defined, in the perpetration of the crime charged in the two counts of the information, or in either, then you may find him guilty as charged in the information."

It is not the law that an accessory during the fact, that is to say, one "who stands by without interfering or giving such help as may be in his or her power to prevent a criminal offense from being committed," shall be deemed

and considered as a principal and punished as such. The offense is a distinct offense, and the penalty therefor is different from the penalty prescribed for the principal. C. L. secs. 6645, 6646; *Farrell v. People,* 8 Colo. App. 524, 46 Pac. 841. Some language in the opinion in *Noble v. People,* 23 Colo. 9, 13, 45 Pac. 376, is misleading. Noble was *not* an accessory during the fact, as defined in the section there referred to (now C. L. sec. 6645). There, the evidence showed "a concerted action" by Noble, Holt, and Romero in attempting to commit the robbery that resulted in the homicide. A sentence of death was affirmed. If Noble had been merely an accessory during the fact, his sentence could not have exceeded imprisonment for two years and a fine of $500. C. L. secs. 6645, 6646.

Instruction No. 3, so far as it relates to an accessory during the fact, is erroneous. But, in view of the facts disclosed by the record, that part of the instruction could not have misled the jury. That the defendant was guilty of the offenses with which he was charged, was proven by conclusive evidence. The defendant offered no evidence to contradict it, or that even tended to contradict it, in any particular. It is not every error in an instruction that requires a reversal. C. L. sec. 7103. No other verdict could have been rendered by a jury having a due regard for its oath. The substantial rights of the defendant were not prejudiced. No reversible error was committed in giving the instruction. *Schlessinger v. Schlessinger,* 39 Colo. 44, 50, 88 Pac. 970, 8 L. R. A. (N. S.) 863; *Ingemarson v. Coffey,* 41 Colo. 407, 415, 92 Pac. 908; *Fearnley v. Fearnley,* 44 Colo. 417, 431, 98 Pac. 819; *Denver, N. W. & P. Ry. Co. v. Howe,* 49 Colo. 256, 112 Pac. 779; *Burnham v. Grant,* 24 Colo. App. 131, 145, 134 Pac. 254; *Nelson v. Nelson,* 27 Colo. App. 104, 106, 146 Pac. 1079; *West v. Camden,* 135 U. S. 507, 10 Sup. Ct. 838, 34 L. Ed. 254; *Robinson v. Denver City Tramway Co.* (C. C. A. 8th Cir.) 164 Fed. 174, 176; 14 R. C. L. pp. 815, 816.

The judgment is affirmed.