STATE OF VERMONT *v.* STANLEY PERRAS.

(86 A2d 544)

January Term, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY and ADAMS, JJ., and CHASE, Supr. J.

Opinion Filed February 5, 1952.

*Joseph S. Wool* for the respondent.

*Lawrence H. Deshaw,* State's Attorney, for the State.

ADAMS, J. At the September Term, 1950, of the Chittenden County Court, the respondent was convicted of arson in the second degree. The case is here on his exceptions to the denial of his motion for a directed verdict. While stated in various ways, the substance of the motion was that there was no evidence from which the jury could find that the fire was incendiary and that the burning was the act of the respondent.

This is a criminal case, but the rule in passing upon the motion is the same as in civil cases. The evidence must be taken

in the light most favorable to the state. *State* v. *Rounds,* 104 Vt 442, 448, 160 A 249; *State* v. *Boudreau,* 111 Vt 351, 360, 16 A2d 262; *State* v. *Wilson,* 113 Vt 524, 526, 37 A2d 400. The effect of modifying evidence is to be excluded. *State* v. *Woolley,* 109 Vt 53, 63, 192 A 1.

The testimony thus considered showed the following facts,— what is known as the Open Door Restaurant is located on Church Street in Burlington. On September 28, 1950, and previous thereto it was operated by a Mrs. Terry. There is an alley five or six feet wide leading by the back or kitchen door of the restaurant. This door faces north. Around the corner of the building and about seven feet from the corner, out of sight from the kitchen door and facing west is a hatchway. It leads into the cellar and has a wooden door which swings in at the bottom of the steps.

When the cooks cleaned the range in the kitchen they used a piece of burlap or burlap bag, saturated it with cooking oil, wiped the stove, took the burlap out the kitchen door and threw it away. Generally it landed in a receptacle but sometimes landed on the ground. There were some of these on the ground near the door on the evening in question.

The respondent had worked in the restaurant as a cook. He was familiar with the rear of the building and knew where the hatchway was located. He knew about the use of the burlap bags to clean the range and had seen some of them after they had been used outside the kitchen door. Shortly after September 1, 1950, and after he had worked at the restaurant for about two months, he was reprimanded by Mrs. Terry for something he had done in the kitchen. He became angry and stood in the middle of the dining room full of people, swore, used vile language and quit.

During the afternoon and early evening of September 28, the respondent was in Burlington, visited several places and had beer to drink. A few minutes before nine o'clock he came into the Open Door Restaurant for the purpose of getting some beer to drink. He asked the bartender, Joe, for a beer and Joe refused to serve him any. They had some words and Joe told the respondent that Mrs. Terry had ordered that he should not be served any liquor. He was angry, became very boisterous and created quite a commotion. He wanted to fight with Joe. He said he was going to make it tough for Mrs. Terry and would put her out of business. There was what a student at the University, who worked in the restaurant as a waiter,

termed a "brawl", "the biggest one we had at the Open Door". After it was over the respondent stayed around three or four minutes then left. It was then about five minutes after nine.

Shortly after this episode, the cook, when he had finished mopping up, stepped out the back or kitchen door to hang up his mop. While he was on the step, the respondent ran by in the alley. The direction in which he was running would take him by the hatchway and there are several exits from there to the street. Just as the cook turned to re-enter the kitchen, he saw another man whom he did not know run by in the alley. In about fifteen minutes the kitchen started to fill up with smoke. The cook checked things inside the kitchen and found no fire. He then went outside and saw smoke coming from the hatchway. He returned to the kitchen, picked up a cooking kettle, filled it with water, went out to the top of the hatchway stairs and threw the water on the fire. He procured another kettle of water and threw it on the fire and put it out. The hatchway door was locked and he kicked it open to see if there was any fire inside. There was none. He then saw a piece of burlap or burlap bag lying right in the corner of the door on the left side in which the water had not extinguished the fire. He "stamped" on it and put the fire out completely. When he first saw the fire, there were flames and the door and casing were on fire. Because of the smoke, he did not see the burlap bag before he went down the hatchway steps to kick the door open.

The police station was called, an officer came and later a representative from the State Fire Marshal's Office also arrived. The burlap bag was examined by them. It was wet, partly burned and greasy. They also found a cigarette stub and a partly burned paper match folder lying on the door sill in the hatchway. The door and casing were charred. There was some other burlap that was greasy lying on the ground near the kitchen door and some in a wooden box across from the step to that door.

On their second trip that evening to the respondent's home in Winooski, the officers found the respondent there. At their request, he accompanied them to the State Police office in Burlington, where he was questioned about his activities on that night. He told them that he had a few beers at various places, naming them, then went to the Open Door. He was asked if he had had words with the bartender and he denied it. The officers informed him that he had become belligerent there and he then admitted that he had words with

Joe, the bartender, and was mad at him for not serving him beer and at Mrs. Terry because she had ordered Joe not to serve him. He was asked if he had been in the alley at the rear of the Open Door Restaurant and he denied it. He said he had been at the Mayflower Restaurant, then to the Open Door and upon leaving there sometime after nine, he had walked alone to Gabe's Restaurant on Main Street and met two men there, naming them, and on leaving there they all went to his home in Winooski. When asked again about being in the alley in the rear of the Open Door, about the burlap bag, partially burned book of matches and cigarette stub, he shouted and said he had been a tough marine, used vile language about "cops"; that if he was going to set a fire he would do a good job and burn it to the ground and that he knew how from past experience and that no one could prove he was in the alley in back of the Open Door alone. When asked what he meant by that, he denied that he said it; then said he could get someone to say that he had walked with him to Gabe's Restaurant from the Open Door; that he could always dig up witnesses for anything; that he could defend himself in court rather than obtaining a lawyer as he knew enough about law. When told that he had already stated to them that he had walked to Gabe's alone, he said he would, if necessary, get someone to say they had been with him.

 The mere fact of the burning of a building is not sufficient to establish the corpus delicti, for if nothing more appears it will be presumed that the fire was the result of accident or some providential cause, rather than the result of a criminal design, but the incendiarism may be proved by circumstantial evidence. Since the evidence that the fire was incendiary and that the respondent set it is entirely circumstantial, the circumstances proved must do more than create a mere suspicion, however strong. The circumstances shown must exclude every reasonable hypothesis except that the respondent is guilty. *State* v. *Baker,* 115 Vt 94, 97, 53 A2d 53.

██ Under these rules, the test is whether the State introduced evidence fairly and reasonably tending to show the respondent's guilt, or in other words whether the jury on the evidence would have been justified in finding the respondent guilty beyond a reasonable doubt. *State* v. *Boudreau,* 111 Vt 351, 361, 16 A2d 262; *State* v. *Legacy,* 116 Vt 320, 321, 75 A2d 668. Another form of expression used on such motions is that there must be substantial evidence to make a case for the jury. Also the evidence must be of such a

quality and character as to justify a jury, acting reasonably, to predicate a verdict thereon in favor of the party having the burden of proof. *State* v. *Boudreau, supra* and cases cited.

It needs no further recapitulation of the evidence to show that a jury acting reasonably would have been justified in finding beyond a reasonable doubt that the fire here was of incendiary origin.

■ The next matter for consideration is the respondent's connection with the fire. He was angry and had expressed animus against the owner of the property just prior to the fire and at that time threatened to put her out of business. He was familiar with the locale. It was started with material of which he knew the location and nature. He was seen in the immediate vicinity just prior to the discovery of the fire. When he was inquired of by the officers about his presence there he denied it and said no one could prove that he had been there. These false answers and other answers and statements given to the officers and his attitude when he was questioned were incriminating circumstances and showed a consciousness of guilt. *State* v. *Baker, supra,* at 97; *State* v. *Bradley,* 64 Vt 466, 470, 24 A 1053; *State* v. *Harrison,* 66 Vt 523, 528, 29 A 807. The foregoing is sufficient without additional elaboration to show that the evidence as to the respondent's setting the fire was sufficient to meet the foregoing tests.

*The motion for a directed verdict was properly denied. Exceptions overruled and judgment affirmed. Let execution be done.*