### State of Vermont v. Henry Hart

[117 A2d 387]

May Term, 1955.

Present: **Jeffords, C. J., Cleary, Chase and Hulburd, JJ., and Shangraw, Supr. J.**

Opinion Filed October 4, 1955.

*Joseph M. O' Neill* and *Silvio T. Valente* for the respondent.

*John S. Burgess*, State's Attorney, for the State.

**Shangraw, Supr. J.** This is a prosecution brought under V. S. 47, §8301 and the related Section 8300, on an information charging the respondent with burglary in the daytime of the summer camp of Norman B. Boothby located in Weston, Vermont. Verdict guilty. Judgment thereon, sentence, and execution of sentence stayed. The case comes here upon respondent's exceptions to the denial by the Court of respondent's motion for a directed verdict of not guilty made at the close of the State's evidence and renewed at the close of all the evidence.

The respondent in his brief limits and assigns as ground of error, properly raised by motion made at close of all the evidence, failure of the Court to direct a verdict of not guilty by reason of insufficient evidence on the part of the State to establish by the requisite proof a 'breaking' on the part of the respondent or his companions. This is the only question or exception briefed, hence the other exceptions are not here considered.

In determining whether the lower court was correct in denying the respondent's motion for a directed verdict, the evidence must be taken in the light most favorable to the State. *State* v. *Boudreau*, 111 Vt 351, 360, 16 A2d 262; *State* v. *Wilson*, 113 Vt 524, 526, 37 A2d 400; *State* v. *Perras*, 117 Vt 163, 165, 86 A2d 544.

The evidence so taken showed the following facts. Norman B. Boothby of Middletown, Connecticut, was the owner of certain land situated in the Town of Weston, County of

Windsor, on which, at time of alleged offense, were located two buildings consisting of an old house and a small two car garage. This property was purchased by Mr. Boothby in the year 1943 and each summer he worked on the property repairing and modernizing the old house. Sometime in the latter part of August, 1953, he left the premises after locking all the doors and closing up the windows, leaving therein certain tools, carpenter's equipment, and other items of personal property.

Mr. Boothby returned to the property November 24, 1953, at which time he discovered that the lower sash of a window on the north side of the house had been removed and was on the ground. The glass was broken and the sash cracked in one corner. The window in question was nailed securely on the inside when he left in August, 1953. He further found that certain tools and items of personal property were missing. None of the missing items have been found.

On or about November 1, 1953, a Mrs. Ethel Parker went to the Boothby house and observed that the doors and windows were closed. She was the last known person to have been at the property before November 23, 1953.

On November 23, 1953, at approximately 4:00 P.M. a Mr. Raymond Benson of Weston, Vermont, was deer hunting in the vicinity of the Boothby property and while standing about 250 feet from the house on this property he saw the respondent, in the company of four other persons, arrive at the property in an automobile. He observed them get out of the automobile, go to the window on the north side of the house, and immediately thereafter saw the respondent with three of his companions enter the house through the north window above mentioned. Mr. Benson continued to watch while the respondent and the three others were in the house and some time later when they came out he observed each of them carrying something but could not identify any of the articles, except that one person was carrying an object, orange in color.

On direct and cross examination, Mr. Benson, in part, testified as follows:

Direct Examination:

Q. Could you see at all times the house?

A. Yes.

Q. They went through the window, you say?

A. They did.

Q. Could you see whether the window was open or otherwise?

A. I could not.

Q. You did see them go through the window?

A. I did see them go through the window.

Cross Examination:

Q. You don't know what window he went through?

A. I know what window they went through.

Q. How long did it take them to go through this window?

A. One jump and they was in.

Q. Did they remove the window?

A. Not that I see.

Q. What did they do, pull a Superman stunt and jump through the glass?

A. I didn't see.

Q. So the window was open.

A. Evidently.

██ The test laid down in passing upon respondent's motion for a directed verdict is whether the State introduced evidence fairly and reasonably tending to show respondent's guilt, or in other words, whether the jury on the evidence would have been justified in finding the respondent guilty beyond a reasonable doubt. *State* v. *Boudreau*, 111 Vt 351, 361, 16 A2d 262, and cases cited. A verdict of acquittal should be directed on motion by the respondent, when the evidence raises only a suspicion of guilt, or leaves it uncertain or dependent upon conjecture. *State* v. *Sanford*, 118 Vt 243, 244, 245, 108 A2d 516.

█ The leading case in Vermont in burglary is *State* v. *Lapoint*, reported in Vol. 87, 115, 88 A 523, 524, and at page 119 of the opinion this Court therein stated: "The offense consists in breaking and entering with felonious intent; and

the real breaking is the removal of the obstruction which, if left as found, would prevent the entering." This appears to be the true test. The word 'break' implies the use of force. The word 'break' as used in the two sections of our statute under consideration have not been defined by our Legislature, hence judicial definition thereof must be followed and accepted.

The only question presented is whether there was evidence fairly and reasonably tending to show that the respondent or his companions broke into the house at the time in question.

The State urges that it may be reasonably inferred from the fact that the window in question was closed on November 1, 1953, that it was in place on November 23, 1953. It also claims that from the evidence of the entering and removal of personal property the jury could reasonably infer that the window was removed by the respondent or a member of his party on the last mentioned date. To this we do not subscribe. The testimony of Mr. Benson destroys and negatives these claimed inferences.

The northerly side of the house was in view of the witness Mr. Benson at all times. He testified in detail as to what occurred during the period from respondent's arrival to departure. It seems most unlikely that he would have failed to see the lower sash of the window being taken out if so done by the respondent or his companions. It appears reasonable that the window was already open. In any event, it is a matter of conjecture, and the jury was called upon to guess or surmise on the issue of breaking. It cannot be said that the evidence was of such character as to exclude every reasonable hypothesis consistent with respondent's innocence, or remove the issue from the realm of uncertainty and conjecture. While the finger of suspicion may point towards the respondent, suspicion alone is not sufficient to warrant a conviction. This we have repeatedly held.

■ There being no evidence fairly and reasonably tending to establish the element of "breaking" as alleged, the respondent's motion for a directed verdict should have been granted.

*Judgment reversed and verdict set aside. Judgment that the respondent is not guilty and he is discharged.*