### State of Vermont v. Lloyd Lawrence Aldrich

[ 175 A.2d 803 ]

September Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed November 7, 1961

*John Morale,* State's Attorney, for the State.

*Wilson, Keyser & Otterman* for the respondent.

**Holden, J.** The respondent, Lloyd Lawrence Aldrich, was brought to trial at a session of the Orange Municipal Court in December 1960 on an information which alleged violation of the fish and game laws. The complaint consists of two counts. Count 1 charges that the respondent on August 21, 1960 at Topsham, Vermont used a flashlight in collaboration with another person to locate and take wild deer. Count 2 informs against the respondent for transporting a wild deer during close season at Topsham on August 21, 1960. At the conclusion of the evidence the respondent moved for a directed verdict of

acquittal. The motion was denied and the court submitted the case to the jury on both counts. The jury failed to reach a verdict. The respondent requested and obtained permission to appeal the questions involved in the denial of his motion for verdict pursuant to 12 V.S.A. §2386.

The first count relates to 10 V.S.A. §2982 (a) :

A person shall not throw or cast the rays of a spotlight, jack, or other artificial light on any highway, or any field, woodland, or forest, for the purpose of spotting, locating or taking any wild animal, except that a kerosene light may be used to take skunks and raccoons ; provided, however, that a flashlight of not more than two cells not greater in size than number 950 may be used while locating in and taking from a tree any raccoon treed by a dog.

The second count alleges an offense against 10 V.S.A. §3059 :

A person shall not take a wild deer by the aid of a snare, trap, salt lick, jack or other light or use such devices to entrap or ensnare deer, nor shall a person hunt deer by a dog or bitch. A person shall not have in his possession or transport a wild deer taken by such illegal devices, nor any wild deer taken in close season. A person shall not transport a wild deer with horns less than three inches in length during the open season except such deer as are taken under the provisions of §3154 of this title.

Shortly after three o'clock in the morning of August 21, 1960, during the close season for taking wild deer, Mrs. Geneva French heard a gunshot in the vicinity of a trailer which she occupied as a dwelling on the East Topsham-East Corinth highway. She arose and observed a light in a field some three hundred feet distant from the trailer. The light moved but the witness could not observe anyone holding the light nor anyone standing nearby. Another shot was fired. Mrs. French awakened her son Ernest. Ernest dressed hastily and watched from his car, parked in the driveway at the front of the trailer. Shortly he heard an automobile motor start nearby to the south. A vehicle came into view from this direction and proceeded north on the East Topsham-East Corinth road. Ernest followed as the car ahead traveled toward the Swamp Road. The lead vehicle was a light green Studebaker and carried New Hampshire registration GK 562. The New Hampshire car turned off the highway onto the Swamp Road. French returned to the trailer.

Some time before daylight on the same morning, a car bearing a V-emblem on the grill turned off the Swamp Road into the driveway to the farm of Charles Whitcher. Whitcher watched the vehicle turn around and depart. It stopped for a brief period about 100 yards from the house on its return to the Swamp Road. The next morning, while on his way to the creamery, Whitcher observed tire treads imprinted on the surface of the driveway. In the vicinity of the area where he observed the vehicle stop during the preceding darkness he spotted the carcass of a small deer just off the driveway. There was a spot of fresh blood on the bank nearby.

Later in the morning, in response to a call from the French household, a state game warden named Denton visited the French place to investigate the events that occurred during the nighttime. In the highway south of the French trailer, Denton found a pool of wet blood. A trail of blood led from this spot into the field across from the trailer, to an area where the grass was depressed and matted down. In the vicinity of the bloodstained highway, the warden gathered up some pieces of reddish brown deer hair. The texture and coloring of the hair conformed to that generally obtaining in wild deer in this area during the summer months.

During the evening of the same day, Warden Denton, accompanied by a New Hampshire police officer, visited the home of the respondent in Woodsville, New Hampshire. The respondent voluntarily exhibited a light green Studebaker bearing New Hampshire registration GK 562. The vehicle had a V-emblem on the front grill. The officers inspected the interior of the automobile with the respondent's consent. The trunk was clean but on the edge or lip of this compartment, the warden detected and preserved particles of reddish brown deer hair. Other interior parts of the car were littered and dirty.

Specimens of deer hair taken from the roadway near the French trailer, and particles taken from a felt mat found near the carcass on the Whitcher farm, were compared microscopically with hair taken from the deer carcass itself. They appeared identical to Dr. Pomar, the director of the division of Bacteriology of the State Health Department. Dr. Pomar testified to this examination and its result during the trial.

During the course of Warden Denton's visit to the respondent's home at Woodsville, the respondent at first denied that he was in the East Topsham-East Corinth area on the morning in question. After being informed by the officers that his car registration had been seen

and recorded in this vicinity at that time, the respondent admitted he had been driving in the area at the time and place indicated.

The State produced evidence that identified the tire marks imprinted on the Whitcher driveway. The description of these marks conformed to photographs of the tire treads on the respondent's Studebaker.

The respondent did not testify and offered no evidence by way of defense. The trial court has certified the question of error in submitting both counts to the jury.

There is nothing more than strong suspicion to link the respondent to the light observed by Mrs. French in the field across the road from the trailer. No flashlight was found in the respondent's possession. Short of conjecture, there is nothing to establish that the respondent was in the field when the light was flashed or that he participated in the actual taking or location of wild deer. His subsequent presence nearby the scene of the offense is not sufficient to establish participation in the illegal use of the artificial light. *State* v. *Orlandi,* 106 Vt. 165, 171, 170 Atl. 908. And suspicion, however strong, will not supply the place of evidence. *State* v. *Foss,* 110 Vt. 453, 458, 8 A.2d 648; *State* v. *Boudreau,* 111 Vt. 351, 361, 16 A.2d 262. The respondent's motion for verdict of acquittal as it relates to Count 1 of the information should have been granted.

The evidence in support of the second count relating to illegal transportation of a wild deer out of season is of different substance and persuasion. It is not doubtful that a deer was killed in the field near the French place and that it was transported from the scene of the kill. The respondent's admission that he travelled the highway at the time and place charged is not refuted. His means of conveyance was connected to the carcass of the game by expert testimony that compared the texture and color of the hair taken from the trunk with that found at the French place and that of the animal itself. The respondent's initial denial of his presence in the Topsham area at the time of the offense, and his later retraction when confronted by the fact that his car had been observed there, tends to show a consciousness of guilt. *State* v. *Bradley,* 64 Vt. 466, 470, 24 Atl. 1053; *State* v. *Stacey,* 104 Vt. 379, 398, 160 Atl. 257.

The quality of the evidence supplied by the multiple events and circumstances constructs a pattern of proof that rises to something

substantially more than suspicion. It has the capability of convincing responsible jurors that protected game had been unlawfully transported and that the respondent was the conveyor. *State v. Wooley,* 109 Vt. 53, 63, 192 Atl. 1; *State v. Perras,* 117 Vt. 163, 167, 86 A.2d 544. Count 2 was properly submitted.

The remaining questions certified relate to the seizure of the respondent's automobile after the offense had been completed. Several days after the respondent's arrest and arraignment he was halted while operating his Studebaker on the public highway in Wells River, Vermont, en route to his place of employment. The game warden Denton, in the company of another enforcement officer, seized the vehicle without warrant or other process, and has retained it in his possession since August 29, 1960. The respondent went before the Orange Municipal Court where his prosecution was pending and requested the court to order the return of his vehicle. The motion was denied and the question certified.

The issue involved is not concerned with the admissibility of evidence and the vehicle itself was not used for this purpose at the trial. The State seeks to justify the seizure on the strength of 10 V.S.A. §3061. It is there provided:

> When firearms, jacks, artificial lights, vehicles and any other device used in the taking or transportation of such deer is seized or taken by an officer or warden, with or without a warrant, the officer or warden who makes such seizure shall forthwith give notice thereof to a grand juror of the town in which such seizure is made or to the state's attorney of the county. Such grand juror or state's attorney shall attend and act in behalf of the state at the hearing against the devices so seized, and the officer making the seizure without warrant shall be allowed the same fees as if he had acted under a warrant.

10 V.S.A. §3062 states:

> Such officer or warden shall retain possession of firearms, jacks, lights, vehicles and devices so taken until final disposition of the charge against the owner, possessor or person using the same in violation of the provisions of sections 3059 and 3060 of this title. When such owner, possessor or person using such firearms, jacks, lights, vehicles and devices in violation of such sections is convicted of such offense, the court wherein such conviction is had shall

cause the owner, if known, and possessor and all persons having the custody of or exercising any control over the firearms, jacks, lights, vehicles and devices seized, either as principal, clerk, servant or agent, and the respondent to appear and show cause, if any they have, why a forfeiture or condemnation order should not issue. Such hearing may be held as a collateral proceeding to the trial of such respondent in the discretion of the court.

■ These statutory provisions contemplate a forfeiture and prescribe procedure to accomplish this result. Stautes looking toward a penal forfeiture are not favored and are to be strictly construed. *United States* v. *One 1936 Model Ford,* 307 U. S. 219, 59 S. Ct. 861, 83 L.Ed. 1249, 1255; *Keeter* v. *State ex rel. Saye,* 82 Okla. 89, 198 P. 866, 17 A.L.R. 557, 567; 23 Am. Jur. Forfeitures, §5, p. 601; C.J.S. Forfeitures, §4b, p. 8.

The question before us is restricted to this. Does the statute authorize a warden, acting without a warrant, to seize an automobile used in connection with a past offense, committed beyond the presence and observation of the enforcement officer?

■ Whether the legislature contemplated a past or present use of the offending vehicle to justify seizure without a warrant is not clear from the language of the sections upon which the State relies. Section 3061 employs the past tense of the verb. Section 3062 refers to the present. But since the powers of game wardens to arrest and to search and seize instruments used in the unlawful taking of fish and game are related, we are to construe these sections with reference to other provisions of the fish and game laws dealing with the same subject. *State* v. *Fox,* 122 Vt. 251, 254, 169 A.2d 356; *State* v. *Central Vermont Railroad Co.,* 81 Vt. 463, 466, 71 Atl. 194, 81 Am. St. Rep. 1065.

The specific powers and duties of wardens are defined in Subchapter 4 of Part 4 of Title 10. Section 2382, contained in this subchapter, empowers such officers to "arrest, without warrant and on view, a person found violating the provisions of this Part * * *." And they "shall seize fish, birds and quadrupeds taken in violation of this Part." 10 V.S.A. §2383 confers upon wardens the authority to search an automobile without warrant "where they have reason to believe that fish, birds or quadrupeds are possessed" in violation of the fish and game laws.

█ The ambiguity of 10 V.S.A. §3061 is at once dispelled when referred to the more specific provisions of Title 10 relating to duties and authority conferred on these particular enforcement officers. Accordingly, we conclude that the authority of state wardens to act without a warrant is confined to those occasions when the culpability of the offender and his instruments of the crime are demonstrated by the commission of the act or the possession of its product in the presence of the officer. Since the State has not made it appear that the respondent's vehicle was engaged in any illegal transportation of wild game at the time of its seizure, it is wrongfully and unlawfully detained. See *Seay* v. *Commonwealth,* 152 Va. 982, 146 S.E. 198, 61 A.L.R 997, 1001; *State* v. *Chorofsky,* 122 Me. 283, 119 Atl. 662, 664; 23 Am. Jur. Forfeitures and Penalties, §5, p. 602.

█ "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." Holmes J. in *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061, Ann. Cas. 1917D, 854; *In re Cornell,* 111 Vt. 454, 460, 18 A.2d 151; *State* v. *Auclair,* 110 Vt. 147, 156, 4 A.2d 107. The construction of 10 V.S.A. §3061 advocated by the State is confronted with limitations imposed by both state and federal constitutions.

█ Article 11th of the Declaration of Rights in the Constitution of Vermont protects the right of the people of this State to possess property free from unlawful search and seizure until sufficient foundation has been established to justify the issuance of a proper warrant. Its counterpart in the 4th Amendment to the United States Constitution is of similar effect. Seizure of a motor vehicle on the public highway may be accomplished without a warrant only where the seizing officer has reasonable cause for believing that the automobile which he halts is illegally transporting contraband. *Carroll* v. *United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 798.

According to the testimony of Warden Denton, he told the respondent he was "seizing his car as evidence." No claim is made that the warden entertained any thought that the vehicle was transporting illegal game at the time of the seizure. The respondent had already voluntarily appeared in the Orange Municipal Court several days prior to the seizure. He had been arraigned and was awaiting trial. And at the time of the trial, for all that appears from the record, no

process has ever issued against the vehicle sought to be forfeited. See *In re Brenner,* 6 F.2d 425, 427. A seizure and detention thus constituted is unlawful.

Although the vehicle was illegally held, it was in the constructive jurisdiction of the trial court. *The Brig Ann,* 13 U.S. 289, 3 L.Ed. 734, 735; 12 C.J.S. Forfeitures, §5c, p. 12; 23 Am. Jur. Forfeitures and Penalties, §11, p. 608. That court had the power to order its release from detention and return to the person from whose custody it was taken. Property capable of lawful possession and use that has been wrongfully seized should be ordered returned. It was error for the court to deny the respondent's request for return. *Amos* v. *United States,* 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654, 655, 656; *Appeal of United States,* 42 F.2d 424, 70 A.L.R. 1041, 1044; 47 Am. Jur. Searches and Seizures, §48, p. 529; 79 C.J.S. Searches and Seizures, §91, p. 912.

The respondent also resorted to a petition for contempt against the warden as a means of obtaining the return of his vehicle. The motion was overruled and the question certified. Until such an order had been entered by the court and wilfully disobeyed by the warden, there was no justification for the respondent's application for process in contempt. This motion was properly denied.

*The orders of the Orange Municipal Court denying the respondent's motion for directed verdict in Count 1 and the denial of the motion for the return of the Studebaker automobile are reversed. The orders of the court in denying the respondent's motion for directed verdict as to Count 2 and the denial of process in contempt are affirmed. Cause remanded.*