# State of Vermont v. James M. Ballou

[ 238 A.2d 658 ]

December Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 6, 1968

*Ezra S. Dike,* State's Attorney, and *Alan W. Cheever,* Assistant Attorney General, for the State.

*John A. Burgess,* for the defendant.

**Shangraw, J.** The respondent, James M. Ballou, was brought to trial by jury at a session of the Addison District Court in March 1967 on an information issued by the State's Attorney of Addison County which alleged a violation of the fish and game laws. The complaint in part alleged that the respondent at Granville in the County of Addison, on November 11, 1966 "was then and there in possession of a wild deer unlawfully taken in closed season." This is a violation of 10 V.S.A. section 4781 which reads:

"A person shall not possess a wild deer except during the open season and for a reasonable time thereafter unless otherwise provided, and then only such as can be legally taken. A person shall not possess a wild deer taken by any illegal devices, nor any wild deer taken in closed season."

It is conceded that the wild deer, with which we are concerned was unlawfully taken in closed season.

At the close of the State's evidence, the respondent moved for a directed verdict of not guilty on the ground that the State had failed to introduce evidence of the charge of the possession of a wild deer unlawfully taken in closed season. This motion was denied. At the close of all the evidence, the respondent again moved for a directed verdict on the same ground which was granted. The State was allowed an exception. Judgment on the verdict was withheld.

On request made by the State the trial court, in its discretion under the provisions of 13 V.S.A. section 7403 passed the cause to

this Court before final judgment, and certified, pursuant to 12 V.S.A. App. I, R 2A, that the only question for review by this Court is, "Did the State introduce evidence in the case of possession of a wild deer unlawfully taken in closed season sufficient to have the case submitted to the jury?"

On appeal the Attorney General on motion before this Court was permitted to intervene on behalf of the State of Vermont and file briefs in addition to that furnished by the State's Attorney of Addison County.

■ By directing a verdict of not guilty the lower court ruled as a matter of law that there was insufficient evidence from which the jury could reasonably find the respondent guilty of the charge beyond a reasonable doubt.

■ This is a criminal case, but the rule in passing upon the motion is the same as in civil cases. The evidence must be taken in the light most favorable to the State. *State v. Perras,* 117 Vt. 163, 164, 165, 86 A.2d 544; *State v. Hart,* 119 Vt. 54, 55, 117 A.2d 387. The effect of modifying evidence is to be excluded. *State v. Woolley,* 109 Vt. 53, 63, 192 A. 1.

■ The test laid down in passing upon respondent's motion for a directed verdict is whether the State introduced evidence fairly and reasonably tending to show respondent's guilt, or, in other words, whether the jury on the evidence would have been justified in finding the respondent guilty beyond a reasonable doubt. *State v. Boudreau,* 111 Vt. 351, 361, 16 A.2d 262; *State v. Perras, supra,* 117 Vt. at 167, 86 A.2d 544; *State v. Hart, supra,* 119 Vt. at 57, 117 A.2d 387; *State v. Ciocca,* 125 Vt. 64, 73, 209 A.2d 507.

■■ A verdict of acquittal should be granted on motion by a respondent, when the evidence raises only a suspicion of guilt, or leaves it uncertain or dependent upon conjecture. *State v. Hart, supra,* 119 Vt. p. 57, 117 A.2d 387; *State v. Sanford,* 118 Vt. 242, 243, 244, 245, 108 A.2d 516. Suspicion, however strong, will not supply the place of evidence. *State v. Aldrich,* 122 Vt. 416, 420, 175 A.2d 803.

■ The offense charged is a misdemeanor. All who knowingly and intentionally participate in the commission of a misdemeanor are principals and may be convicted thereof either separately or jointly. *State v. Bosworth,* 124 Vt. 3, 10, 197 A.2d 477.

4

■ As stated in *State* v. *Orlandi et al.*, 106 Vt. 165, 171, 170 A. 908, 910,

> Where several persons combine under a common understanding and with a common purpose to do an illegal act, every one is criminally responsible for the acts of each and all who participate with him in the execution of the unlawful design.

This view was re-affirmed in *State* v. *Barr*, 126 Vt. 112, 122, 223 A.2d 462.

With the foregoing well recognized principles in mind, we briefly refer to the evidence in the light most favorable to the State.

The respondent, of Keene, New Hampshire, is a physician and surgeon. On November 11, 1966 he was also one of ten fish and game commissioners of New Hampshire. During the late afternoon of November 11, 1966 he arrived at John Eaton's Buffalo Camp, a distance of about two miles from Newton Meadow, Granville, Vermont. A number of people assembled at the camp and following a supper Thompson A. Bowen and Gerald S. Sherman appeared at the camp and indicated to the respondent that they knew where a number of deer could be located. Between ten and eleven o'clock in the evening the respondent accompanied by Bowen and Sherman started for Newton Meadow in a Jeep pick-up truck owned by Bowen and being driven by Sherman. Bowen sat on the passenger's side of the driver's seat, and respondent was sitting between the two. Bowen had a 300 Savage rifle placed on the floor boards under the seat upon which all three were sitting.

On arriving at Newton Meadow a number of deer were present. Bowen took the gun from under the seat when the truck was being driven into the meadow and shot the deer in question. It was then about 50 to 75 feet in front of the truck when shot.

While cruising on Route 100 between lower and upper Granville during the late evening of November 11th Daniel J. Gregory, a Fish and Game Warden of the State of Vermont, received a message that there was shooting in the Newton meadow. Gregory in turn alerted Fish and Game Warden Leon E. Litchfield, Deputy Fish and Game Wardens Norman Neil and David T. Patterson were in turn alerted by Litchfield.

Gregory arrived at the meadow first and on approaching this area he saw a flash of light in the back of the field. He drove into the

meadow and first observed men standing by a pick-up truck. These men later proved to be the respondent and his two companions. As he approached, the respondent and Sherman ran towards the woods. Bowen attempted to leave the meadow in the truck but was intercepted by the officer. Gregory noticed a recently shot deer laying on the ground. The deer was by the tailgate of the truck. A blanket lay between the animal and the vehicle.

In searching for the respondent and Sherman, the respondent was found lying face down in brush and tall grass about 75 feet from the deer. Sherman was not then found. About this time Litchfield, Neil and Patterson arrived on the scene.

While in the Newton meadow the respondent made statements to Gregory and Litchfield, some of which were made in the presence of Neil and Patterson, revealing that Bowen and Sherman while at the camp stated that they were going out to "jack a deer" and respondent was asked if he wanted to go along, to which he replied in the affirmative. Dr. Ballou was then inquired of by either Bowen or Sherman if he could run. The respondent replied by saying that he could keep up with the best of them.

While at the Newton meadow and during the respondent's conversation with Gregory and Litchfield, Dr. Ballou further indicated that he was eager to have the matter "settled up," and desired that it be taken care of right then and there without publicity, and that he was willing to pay a fine.

While knowledge of any intention on the part of the respondent's associates to kill a deer was denied by him and supported by evidence on the part of Bowen and Sherman to this effect, all circumstances considered, we must and do view the evidence in the light most favorable to the State.

The State contends that its evidence, and concession of the respondent, were sufficient to support the charge as made and that the lower court erred in not submitting the case to the jury. The crucial question here for review is whether or not there is sufficient evidence of "possession" to warrant a finding of guilty by the jury beyond a reasonable doubt.

10 V.S.A. section 4001(19) of the Fish and Game Statutes defines "possession" as follows: "actual or constructive possession or any control over things referred to:"

6

■ In the case of *State* v. *Gaudin,* 152 Me. 13, 120 A.2d 823 that court had occasion to discuss "possession" as applied to the unlawful possession of any caribou or moose, or parts thereof, in the following language.

"The word 'possession' is often ambiguous in its meaning. It is used to describe *actual possession* and also to describe *constructive possession.* Actual and constructive possession are often so blended that it is difficult to see where one ends and the other begins. *National Safe Deposit Co.* v. *Stead,* 232 U.S. 58, 34 S.Ct. 209, 58 L.Ed. 504. Actual possession exists where the thing is in the physical control, or immediate occupancy of the party. Constructive possession is that which exists in contemplation of law without actual personal occupation. Constructive possession often refers to the person lawfully entitled to immediate physical possession and control. In criminal law possession usually means care, management, physical control, or the secret hiding or protection of something forbidden or stolen. See [2] Bouvier's Law Dictionary (Rawle's 3rd Revision) 'Possession;' 33 Words and Phrases, 'Possession' [pp.], 71-101 and many cases there cited."

We shall not attempt to improve upon the foregoing statement as applied to the case now considered. Possession is synonymous with occupied, held, or controlled. See, Webster's Third New International Dictionary.

■ Section 4781, *supra,* makes it unlawful to have possession of a deer unlawfully taken. Possession, under such a statute, does not necessarily mean on one's own person but includes a conspirator's possession. *Stewart* v. *People,* 83 Colo. 289, 264 P. 720, 38 C.J.S. Game §11, p. 15.

■ It is to be acknowledged that respondent's mere presence near the scene of the offense is not sufficient to establish his participation. *State* v. *Aldrich, supra,* 122 Vt. at 420, 175 A.2d 803. Here, the respondent's presence was by design, and not mere happenstance. The respondent and his associates had agreed and conspired to do, and were co-operating in doing unlawful acts. The combined purpose of the respondent and his associates was to jack a deer. One of its members was in possession of a rifle. The fact that respondent did not personally kill the deer is unimportant. It can hardly be assumed that this excursion was intended only for target practice without the in-

tention of gaining unlawful possession of a deer. At no time did the respondent withdraw and abandon the joint excursion which he and his new acquaintances had embarked upon.

Here, we have the respondent and his two companions in close proximity to the dead deer, blanket, and truck, apparently preparatory to moving the deer onto the vehicle. Possession can be inferred from the position of the respondent, also his associates, in relation to the contraband at the time of its seizure by the officers. *State v. Watson*, 99 Vt. 473, 476, 134 A. 585.

From all the facts and circumstances the jury was entitled to infer that at the time the enforcement officers came upon the respondent and his companions, that the deer was in their joint possession, and abandoned only upon the arrival of the officers.

To conclude, the quality of the evidence supplied by multiple events and circumstances constructed a pattern of proof that rises to something substantially more than mere suspicion of possession. It had the capability of convincing responsible jurors that respondent was in possession of protected game. *State v. Aldrich, supra*, 122 Vt. at 420, 175 A.2d 803. The evidence required the jury's consideration of the case. It was error to direct a verdict of not guilty. The case must be remanded for a new trial.

*The directed verdict of not guilty is reversed, and the cause remanded for a new trial.*