# State of Vermont v. Maurice Armand Martel

[453 A.2d 1112]

No. 77-81

Present: Billings, Hill, Underwood and Peck, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed November 2, 1982*

*Susan R. Via,* Chittenden County Chief Deputy State's Attorney, *Harold E. Eaton,* Deputy State's Attorney, and *Michael Seibert,* Law Clerk (On the Brief), Burlington, for Plaintiff-Appellee.

*John J. Bergeron* and *Kevin G. Bradley* of *Desautels & Bergeron, Inc.,* Burlington, for Defendant-Appellant.

---

\* An opinion handed down in this case was filed on July 7, 1982. At the direction of this Court it was subsequently withdrawn and the case was set for reargument. The instant opinion follows the hearing on reargument.

**Underwood, J.** Defendant, a retired dairy farmer, appeals his conviction of aggravated assault. The type of assault charged was that he intended to prevent a game warden from performing a lawful duty by causing him physical injury. 13 V.S.A. § 1024(a)(4).

As grounds for appeal the defendant claims, *inter alia,* that the State failed to establish beyond a reasonable doubt that the warden was performing a lawful duty when he was physically injured. He maintains that the trial court erred in denying his motion for a judgment of acquittal on this issue. V.R.Cr.P. 29.

■ Taking the evidence in the light most favorable to the State, and excluding modifying evidence, which we must do in reviewing a motion for a judgment of acquittal, *State* v. *Sorrell,* 139 Vt. 648, 649, 432 A.2d 1188, 1189 (1981); *State* v. *Eaton,* 134 Vt. 205, 206, 356 A.2d 504, 505 (1976), the record discloses the following. About 9:30 p.m. on the evening of September 8, 1980, the warden received a telephone call reporting gunshots in the vicinity of the defendant's 565 acre farm on Oak Hill Road in Williston. The warden, who was a neighbor of the defendant, immediately drove up to the latter's farm and there observed the headlights of a vehicle in the meadow behind the defendant's house. The vehicle appeared to be travelling in small semicircles. This observation, in conjunction with the telephone report, led the warden to suspect that a fish and game violation had just been committed or was being committed in his presence.

After making this observation, the warden parked his cruiser on the highway and entered the defendant's meadow on foot. When he saw the vehicle heading towards the defendant's house, he attempted to intercept it. He called for the driver to stop but the vehicle continued on. As it passed, the warden was able to recognize the vehicle as a Scout, the defendant as the driver, and one of defendant's sons as the passenger sitting in the front seat. The warden testified that the defendant may not have heard his call to stop, but he felt the defendant must have seen him.

In any event, the warden ran after the passing vehicle and followed it back to the defendant's garage. He dashed into the garage behind the vehicle, ducking under the motorized

overhead door just as it was closing. Up to this point in time the warden conceded that he had heard no shots, nor seen any dead deer, in the meadow. He also admitted that he had not seen the defendant attempt to spot deer with the headlights of his vehicle.

The warden knew that it was the defendant driving the Scout and that he was driving upon his own lands and travelling toward his own house. He was not sure the defendant heard him say to stop. He was certain, however, that no probable cause existed at that time to arrest the defendant for any fish and game violation.

Inside the garage the warden approached the passenger door of the Scout just as defendant's 17 year old son was alighting. The warden held a flashlight in one hand and a drawn revolver in the other. He shone the flashlight into the Scout as he walked from the passenger door around the rear of the vehicle to the driver's door. There, he confronted the defendant. The warden conceded that he saw no guns, deer or other game inside the vehicle, and no guns in the physical possession of the defendant or his son.

His revolver still drawn, he demanded to know what the defendant was doing in the meadow. The defendant said he was looking for his dog and told the warden to get out of his garage and off his property. When the warden did not leave or holster his revolver the defendant proceeded to usher the warden out by menacing him with the handle from a garden implement. The three men then edged over and out through a side door. Outside, the warden dropped his revolver and he and the defendant grabbed each other in a bear hug and fell to the ground with the defendant on top of the warden. Allegedly, the defendant then assaulted the warden by injuring his shoulder.

13 V.S.A. § 1024(a) (4) provides, in part, that:

> A person is guilty of aggravated assault if he: . . . with intent to prevent a law enforcement officer from performing a lawful duty, . . . causes physical injury to any person.

It is conceded that the game warden is a law enforcement officer within the meaning of 13 V.S.A. § 1024(a) (4), and that he has the power: to enforce fish and game laws and

regulations, 10 V.S.A. § 4192; to arrest without warrant any person committing a fish and game violation in his presence, 10 V.S.A. § 4192, 10 V.S.A. § 4193; to stop a motor vehicle, 10 V.S.A. § 4192, and without a warrant examine the contents of such vehicle if he has reason to believe game is possessed in it, 10 V.S.A. § 4194; and to seize wild animals taken or held in violation of fish and game laws, 10 V.S.A. § 4193. Therefore, the single issue for our determination is whether the warden was "performing a lawful duty" at the time he was injured. If he was not, the defendant cannot be convicted of an aggravated assault under 13 V.S.A. § 1024(a)(4).

The State contends that at all times material the warden was performing a lawful duty. However, it never states what that lawful duty was.

If it was investigating the telephone call which reported shots being fired in the vicinity of defendant's farm, the warden had already completed this investigation before the altercation with the defendant occurred. He himself had heard no shots fired, did not see defendant or his son attempt to shoot from their vehicle, or attempt to spot deer with the headlights, and he had found no dead deer in the meadow. Furthermore, once inside the defendant's garage the warden observed defendant, his son, and the interior of the Scout and saw no evidence of guns or dead game. After making this observation, the warden no longer had any lawful right to remain upon the defendant's premises without a warrant. 10 V.S.A. § 4194. As such, his lawful duty had terminated.

If the State's claim for the warden's continued lawful authority is based on his having had probable cause to make an arrest for a fish and game violation committed in his presence, the warden conceded that at no time did he claim he had probable cause to arrest defendant, without a warrant, for such an offense.

Finally, if the claim is that the warden was making a continued warrantless search incident to a lawful arrest, this argument fails too. Although the warden had his revolver pointed at the defendant on different occasions, he never claimed to have had the defendant under arrest.

The evidence is clear that at most the warden claimed he was investigating a complaint of a possible fish and game violation.

Q. (By the Deputy State's Attorney) ... Based on everything you observed, from the phone call until you entered into that garage, until the time that you actually came into contact—let's say with the swinging of that hoe—what possible violation of the law did you believe that you were investigating?

A. (By the Game Warden) I had a possible deer jacking or taking of deer by illegal means. I had a possible spotting and locating case. And a possible failure to stop for a Fish and Game Officer. I also had a possibility of attempting to take game from a motor vehicle.

There is a world of difference between investigating a complaint and making a search for incriminating evidence. Any suspicions that the warden had of possible fish and game violations committed by the defendant evaporated after he observed the defendant and his son in the garage and examined the interior of the vehicle. There were no guns, and no dead game. "And suspicion, however strong, will not supply the place of evidence." *State* v. *Aldrich,* 122 Vt. 416, 420, 175 A.2d 803, 806 (1961). The warden's lawful authority to remain on the defendant's premises any longer, in the absence of a search warrant, 10 V.S.A. § 4194, had terminated and he should have left when requested. Since the warden was not performing a lawful duty when he received his physical injury, defendant's motion for a judgment of acquittal should have been granted.

In view of our disposition of this principal question, we do not reach the defendant's other claims of error.

*Reversed; judgment of conviction vacated; judgment of acquittal entered.*